**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Molly A. Brooks
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone:  (212) 300-0375

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz, admitted *pro hac vice*
Susan H. Stern, admitted *pro hac vice*
1515 S. Federal Hwy, Suite 404
Boca Raton, Florida 33432
Telephone:  (561) 447-8888

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTINA KUCKER, SONNY URBINE, HILLARY ANDERSON, MAGDA ALEXANDRA SERENO, AMY DOIDGE, JILL FILIPPONE, and HEATHER BRADSHAW, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> PETCO ANIMAL SUPPLIES STORES, INC., <br><br> Defendant. | No.  14 Civ. 9983 (DCF) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

PROCEDURAL HISTORY.................................................................................................. 1

STATEMENT OF FACTS .................................................................................................. 2

I.      Petco Centrally Controls Its Grooming Salons.................................................... 2

II.     Petco Subjects Its Pet Stylists and Grooming Assistants to Uniform Policies .................. 3

III.    Petco Pet Stylists and Grooming Assistants Perform the Same Job Duties Pursuant
        to Petco's Policies and Procedures. ..................................................................... 3

IV.     Petco Subjects Pet Stylists and Grooming Assistants to Uniform Compensation
        Policies .................................................................................................................. 4

ARGUMENT ...................................................................................................................... 6

I.      The FLSA's Remedial Goals Require the Court to Interpret its Coverage
        Expansively............................................................................................................ 6

II.     Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's
        Remedial Goals ..................................................................................................... 7

III.    Plaintiffs Face a Low Burden on this Motion ....................................................... 8

IV.     Plaintiffs Comfortably Meet Their Low Burden ................................................. 10

V.      The Court Should Approve Plaintiffs' Proposed Notice and Notice Process.................. 13

        A.      Plaintiffs' Proposed Notice Is Timely, Accurate, and Informative ...................... 13

        B.      The Notice Should Be Sent to All Pet Stylists and Groomers Who Worked
                Within Three Years of the Filing of this Motion ................................................. 13

        C.      The Court Should Order Petco to Produce Contact Information for the
                Collective .............................................................................................................. 14

CONCLUSION.................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Ack v. Manhattan Beer Distribs., Inc.*,
  No. 11 Civ. 5582, 2012 WL 1710985 (E.D.N.Y. May 15, 2012)............................................14

*Amador v. Morgan Stanley & Co.*,
  No. 11 Civ. 4326, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ...........................................9, 10

*Bellaspica v. PJPA, LLC*,
  3 F. Supp. 3d 257 (E.D. Pa. 2014) .........................................................................................12

*Bijoux v. Amerigroup New York, LLC*,
  No. 14 Civ. 3891, 2015 WL 4505835 (E.D.N.Y. July 23, 2015) ...........................................11

*Braunstein v. E. Photo. Labs., Inc.*,
  600 F.2d 335 (2d Cir. 1978)................................................................................................6, 8

*Capsolas v. Pasta Res., Inc.*,
  No. 10 Civ. 5595, 2011 WL 1770827 (S.D.N.Y. May 9, 2011)............................................12

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ..................................................................................................7

*Chhab v. Darden Rests., Inc.*,
  No. 11 Civ. 8345, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013)........................................16

*Cranney v. Carriage Servs., Inc.*,
  No. 07 Civ. 1587, 2008 WL 608639 (D. Nev. Feb. 29, 2008) ..............................................15

*Cuzco v. Orion Builders, Inc.*,
  477 F. Supp. 2d 628 (S.D.N.Y. 2007)......................................................................................8

*Darrow v. WKRP MGMT. LLC*,
  No. 09 Civ. 01613, 2011 WL 2174496 (D. Colo. June 3, 2011)............................................7

*Dolinski v. Avant Bus. Serv. Corp.*,
  No. 13 Civ. 4753, 2014 WL 316991 (S.D.N.Y. Jan. 28, 2014)............................................12

*Fasanelli v. Heartland Brewery, Inc.*,
  516 F. Supp. 2d 317 (S.D.N.Y. 2007)....................................................................................15

*Fast v. Applebee's Int'l, Inc.*,
  243 F.R.D. 360 (W.D. Mo. 2007) ..........................................................................................15

*Gambino v. Harvard Prot. Servs. LLC*,
  No. 10 Civ. 983, 2011 WL 102691 (S.D.N.Y. Jan. 11, 2011)..............................................14

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*,
    776 F. Supp. 2d 117 (E.D.N.C. 2011)..................................................................................12

*Hallissey v. Am. Online, Inc.*,
    No. 99 Civ. 3785, 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ..............................................15

*Hamadou v. Hess Corp.*,
    915 F. Supp. 2d 651 (S.D.N.Y. 2013)..................................................................................14

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997).......................................................................................8

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)...........................................................................................6, 7, 13

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152 (S.D.N.Y. 2014) .......................................................................................10

*Kassman v. KPMG LLP*,
    No. 11 Civ. 3743, 2014 WL 3298884 (S.D.N.Y. July 8, 2014) ......................................8, 9, 13

*Lewis v. Wells Fargo & Co.*,
    669 F. Supp. 2d 1124 (N.D. Cal. 2009) ...............................................................................15

*Limarvin v. Edo Rest. Corp.*,
    No. 11 Civ. 7356, 2013 WL 371571 (S.D.N.Y. Jan. 31, 2013)..............................................16

*Mark v. Gawker Media LLC*,
    No. 13 Civ. 4347, 2014 WL 5557489 (S.D.N.Y. Nov. 3, 2014) ............................................16

*Mazur v. Olek Lejbzon & Co.*,
    No. 05 Civ. 2194(RMB)(DF), 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005).....................6, 9

*McGlone v. Contract Callers, Inc.*,
    867 F. Supp. 2d 438 (S.D.N.Y. 2012)..................................................................................13

*Morris v. Lettire Constr. Corp.*,
    896 F. Supp. 2d 265 (S.D.N.Y. 2012).............................................................................14, 16

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)................................................................................................6

*Nobles v. State Farm Mut. Auto. Ins. Co.*,
    10 Civ. 04175, 2011 WL 3794021 (W.D. Mo. Aug. 25, 2011)..............................................16

*In re Penthouse Executive Club Comp. Litig.*,
    No. 10 Civ. 1145, 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ...........................................10

*Perrin v. Papa John's Int'l, Inc.*,
  No. 09 Civ. 01335, 2011 WL 4089251 (E.D. Mo. Sept. 14, 2011).......................................12

*Pippins v. KPMG LLP*,
  No. 11 Civ. 0377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012)...................................................14

*Puglisi v. TD Bank, N.A.*,
  998 F. Supp. 2d 95 (E.D.N.Y. 2014) .....................................................................................16

*Raniere v. Citigroup Inc.*,
  827 F. Supp. 2d 294 (S.D.N.Y. 2011).....................................................................................10

*Ruggles v. WellPoint, Inc.*,
  591 F. Supp. 2d 150 (N.D.N.Y. 2008).......................................................................................8

*Schear v. Food Scope Am., Inc.*,
  297 F.R.D. 114 (S.D.N.Y. 2014) ............................................................................................14

*Sharma v. Burberry Ltd.*,
  52 F. Supp. 3d 443 (E.D.N.Y. 2014) ......................................................................................16

*Smith v. Pizza Hut, Inc.*,
  No. 09 Civ. 01632, 2011 WL 2791331 (D. Colo. July 14, 2011)......................................7, 12

*Underwood v. NMC Mortg. Corp.*,
  245 F.R.D. 720 (D. Kan. 2007)...............................................................................................15

*Wang v. Hearst Corp.*,
  No. 12 Civ. 793, 2012 WL 2864524 (S.D.N.Y. July 12, 2012) ..............................................12

*Yu G. Ke v. Saigon Grill, Inc.*,
  595 F. Supp. 2d 240 (S.D.N.Y. 2008).......................................................................................7

*Yu Y. Ho v. Sim Enterprises, Inc.*,
  No. 11 Civ. 2855, 2014 WL 1998237 (S.D.N.Y. May 14, 2014).............................................4

**Statutes**

29 C.F.R. § 531.3(d) ........................................................................................................................7

29 C.F.R. § 531.35 ...........................................................................................................................7

**Other Authorities**

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law
  Enforcement in the Federal Courts*,
  29 Berkeley J. Emp. & Lab. L. 269 (2008)..............................................................................16

## INTRODUCTION

Pet Stylists and Grooming Assistants at Petco Animal Supplies Stores, Inc. ("Petco" or "Defendant") brought this action to recover the costs of grooming equipment Petco required them to purchase. Through this motion, Plaintiffs Kristina Kucker, Sonny Urbine, Hillary Anderson, Magda Alexandra Sereno, Amy Doidge, Jill Filippone, and Heather Bradshaw (collectively, "Plaintiffs") seek to protect the rights of thousands of current and former Pet Stylists and Grooming Assistants by sending them Court-approved notice of this action and letting them decide whether to seek recovery of their equipment costs, which resulted in unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs far exceed their low burden on this motion. The Plaintiffs' deposition testimony and declarations, and Defendant's own documents demonstrate that Defendant subjects Plaintiffs and other Pet Stylists and Grooming Assistants to the same unlawful practices: requiring Pet Stylists and Grooming Assistants to purchase their own grooming equipment and failing to reimburse them for any of these costs. Petco's unlawful policies and practices illegally deprived Pet Stylists and Grooming Assistants of the minimum wage and the correct overtime rate. These workers will benefit from prompt Court-authorized notice.

## PROCEDURAL HISTORY

On December 18, 2014, Plaintiffs Kristina Kucker, Hillary Anderson, Magda Alexandra Sereno, Amy Doidge, and Jill Filippone filed this class and collective action lawsuit alleging violations of the FLSA and New York, California, New Jersey, and Connecticut state wage and hour laws by Petco. ECF No. 1 (Compl.). Specifically, the complaint alleges that Petco improperly failed to pay its Pet Stylists, and Grooming Assistants the minimum wage because it takes unlawful deductions from Plaintiffs' and other similarly situated employees' wages,

including the cost of purchasing and maintaining grooming equipment required to perform their job. *Id.* ¶ 3. On February 17, 2015, Plaintiffs amended their complaint to add two named Plaintiffs, and wage and hour claims under Kansas state law. ECF No. 10

To date, the parties have served discovery requests, have exchanged some documents and have only taken the depositions of Plaintiffs Kristina Kucker and Magda Alexandra Sereno. Declaration of Molly A. Brooks ("Brooks Decl.") ¶ 5.

## STATEMENT OF FACTS

### I.      Petco Centrally Controls Its Grooming Salons.

Petco is a privately held nationwide pet supply and pet services store with over 1,200 locations in the United States, Mexico, and Puerto Rico. *See* Brooks Decl., Ex. 1 (Petco Webpages).[1]

Petco centrally controls the prices, grooming services, and coupons and discounts that Petco Grooming Salons can offer. Ex. 2 (Petco Website). For example, Petco offers the same prices and discounts at all Grooming Salons for the uniform services it offers. *Id.* Petco also dictates what is included in a "Full-service Groom," "Full-service Bath," and "Puppy's First Bath." *Id.* Petco also offers a "Head to Tail or [the grooming is] Free Guarantee." Ex. 3 (Petco Easy Returns Policies).

On its website, Petco offers a virtual tour of what to "expect" at all Petco Grooming Salons in a video called "Take a Salon Tour."[2] The "Take a Salon Tour" video informs customers that all pets go through a "7 Point Plus Check-In" that consists of checking the eyes,

---

[1]      All exhibit references are to the Brooks Decl.

[2]      http://video.petco.com/v/22346/grooming-salon-tour/ (video entitled "Take a Salon Tour") (last visited on Aug. 31, 2015).

teeth, ears, nose, skin and coat, nails and pads, and underside.[3]  The video then demonstrates the

services that are provided such as brushing, bathing, shaving and providing a "gift charm."[4]

## II.  Petco Subjects Its Pet Stylists and Grooming Assistants to Uniform Policies.

Petco's policies with respect to its Pet Stylists and Grooming Assistants do not vary from

salon to salon.  Potential Pet Stylists and Grooming Assistants go to a central website to apply

for job openings.  Ex. 4 (Petco Stylist Careers).  Petco's job announcements for its Pet Stylist and

Grooming Assistant positions describe the position uniformly, listing the same duties regardless

of the location of the store.  Ex. 6 (Pet Stylist Job Postings); Ex. 7 (Grooming Assistant Job

Postings).  Specifically, Petco's job postings for Pet Stylists all list the essential job functions as:

customer service, "[e]nsure OSE standards are maintained," "[i]nteract professionally and

effectively through verbal and written communication with all professional contacts with

emphasis on company interests," "[p]rofessionally perform basic grooming services on animals

as requested by customers and in accordance with company policy and procedure, ensuring the

safety and well-being of each animal," "move animals and merchandise," and "utilize grooming

instruments including shears," among others.  Ex. 6 (Pet Stylist Job Postings); Ex. 7 (Grooming

Assistant Job Postings).  The job announcements do not state that Petco will provide grooming

equipment to Pet Stylists and Grooming Assistants.  *See* Ex. 6 (Pet Stylist Job Postings); Ex. 7

(Grooming Assistant Job Postings).

## III.  Petco Pet Stylists and Grooming Assistants Perform the Same Job Duties Pursuant to Petco's Policies and Procedures.

All Pet Stylists and Assistant Groomers perform the same job duty – grooming animals,

cleaning the salon, and general maintenance.  *See* Ex. 8 (Kucker Tr.) 22:24-23:9, 32:23-34:7,

---

[3]     *Id.*

[4]     *Id.*

74:14-75:16; Ex. 9 (Sereno Tr.) 45:1-24; Ex. 10 (Kucker Decl.) ¶ 3; Ex. 11 (Urbine Decl.) ¶ 3;

Ex. 12 (Sereno Decl.) ¶ 3; Ex. 13 (Doidge) ¶ 3; Ex. 14 (Filippone Decl.) ¶ 3; Ex. 15 (Bradshaw

Decl.) ¶ 3.  Petco requires all Pet Stylists to begin as Grooming Assistants and then go through a

"mentorship program."[5]  "Through the Petco Pet Stylist Apprentice Program, [Pet Stylists] gain

the skills and techniques necessary to become a Professional Pet Stylist." Ex. 4 (Pet Stylist

Careers).

IV.     **Petco Subjects Pet Stylists and Grooming Assistants to Uniform Compensation
        Policies.**

        Petco pays all Pet Stylists and Grooming Assistants on a piece rate basis.  This means

that Petco pays each Pet Stylist and Grooming Assistant a rate of pay for each animal they

service rather than at an hourly rate.  *See, e.g.*, *Yu Y. Ho v. Sim Enterprises, Inc.,* No. 11 Civ.

2855, 2014 WL 1998237, at *12 (S.D.N.Y. May 14, 2014) (noting employer controlled rate and

method of pay because paid employees piece rate for each garment they sewed).  Pet Stylists

earn 50 percent of the amount Petco charges for the grooming and Grooming Assistants earn 40

percent of what Petco charges customers for grooming.  *See* Ex. 8 (Kucker Tr.) 75:17-24; Ex. 9

(Sereno Tr.) 46:3-10; Ex. 10 (Kucker Decl.) 6; Ex. 11 (Urbine Decl.) ¶ 6; Ex. 12 (Sereno Decl.) ¶

6; Ex. 13 (Doidge) ¶ 6; Ex. 14; (Filippone Decl.) ¶ 6; Ex. 15 (Bradshaw Decl.) ¶ 6.

        Petco uniformly requires Pet Stylists and Grooming Assistants to purchase their own

equipment.  Ex. 16 (Petco Frequently Asked Questions) 1096; Ex. 8 (Kucker Tr.) 24:16-25:14,

31:16-32:5, 52:8-25; Ex. 9 (Sereno Tr.) 10:8-11:12, 14:2-25:7, 24:16-21, 26:16-28:12, 67:3-

85:20; Ex. 10 (Kucker Decl.) ¶ 10; Ex. 11 (Urbine Decl.) ¶ 10; Ex. 12 (Sereno Decl.) ¶ 10; Ex.

13 (Doidge) ¶¶ 10, 14; Ex. 14 (Filippone Decl.) ¶¶ 10, 14; Ex. 15 (Bradshaw Decl.) ¶¶ 10, 14.

---

[5]      http://video.petco.com/v/22345/posh-paws-updated-logo-12-15-11-mov/ (video entitled
"7-Point") (last visited on Aug. 26, 2015).

Petco corporate documents explicitly state: "As a PETCO Stylist you will be expected to provide your own clippers, blades, scissors, brushes and combs.  All associates are responsible for the care and maintenance of their own equipment."  Ex. 16 (Petco Frequently Asked Questions) 1096; *see also* Ex. 10 (Kucker Decl.) ¶ 16; Ex. 11 (Urbine Decl.) ¶¶ 10-15; Ex. 12 (Sereno Decl.) ¶¶ 10-15; Ex. 13 (Doidge) ¶¶ 10, 14-16; Ex. 14 (Filippone Decl.) ¶¶ 10, 14; Ex. 15 (Bradshaw Decl.) ¶¶ 10, 14.  Petco managers also instruct Pet Stylists and Grooming Assistants to purchase necessary equipment.  Ex. 8 (Kucker Tr.) 25:13-14, 31:7-13, 31:25-32:5, 52:23-25; Ex. 9 (Sereno Tr.) 10:8-11:2, 19:20-20:2, 26:23-27:10, 55:22-25, 85:13-16; Ex. 10 (Kucker Decl.) ¶¶ 10, 16; Ex. 11 (Urbine Decl.) ¶ 10; Ex. 12 (Sereno Decl.) ¶ 10; Ex. 14 (Filippone Decl.) ¶ 10; Ex. 15 (Bradshaw Decl.) ¶ 10.  This equipment includes: electric clippers, nail clippers, blades, brushes, combs, scissors, and shedding tools.  Ex. 8 (Kucker Tr.) 24:16-20, 25:10-14, 31:16-24, 35:4-10, 51:10-17, 51:24-52:22; Ex. 9 (Sereno Tr.) 10:8-11:12, 14:2-25:7, 24:19-21, 26:16-28:12, 32:13-33:2; Ex. 10 (Kucker Decl.) ¶ 11; Ex. 11 (Urbine Decl.) ¶ 11; Ex. 12 (Sereno Decl.) ¶ 11; Ex. 13 (Doidge) ¶ 11; Ex. 14 (Filippone Decl.) ¶ 11; Ex. 15 (Bradshaw Decl.) ¶ 11.  In accordance with company-wide policy, Pet Stylists and Grooming Assistants also have to purchase their bows, ribbons, and replacement blades.  Ex. 8 (Kucker Tr.) 24:16-17, 31:16-24, 33:24-34, 52:23-55:14; Ex. 9 (Sereno Tr.) 10:17-11:2, 56:17-57:17, 58:5-13, 77:15-23; Ex. 10 (Kucker Decl.) ¶¶ 12, 16; Ex. 11 (Urbine Decl.) ¶ 12; Ex. 12 (Sereno Decl.) ¶ 12; Ex. 13 (Doidge) ¶ 12; Ex. 14 (Filippone Decl.) ¶ 12.  When their equipment needs maintenance, such as sharpening scissors or grooming blades, Pet Stylists and Grooming Assistants have to pay for it.  Ex. 8 (Kucker Tr.) 33:16-34:7, 52:23-53:14; Ex. 9 (Sereno Tr.) 21:23-22:5, 96:12-97:7; Ex. 10 (Kucker Decl.) ¶ 16; Ex. 11 (Urbine Decl.) ¶ 13; Ex. 12 (Sereno Decl.) ¶¶ 12, 14; Ex. 13 (Doidge) ¶ 16; Ex. 14 (Filippone Decl.) ¶¶ 12, 16; Ex. 15 (Bradshaw Decl.) ¶¶ 12, 15.  These costs for equipment purchase and

maintenance caused Petco Pet Stylists and Grooming Assistants to earn less than the minimum wage.  Ex. 8 (Kucker Tr.) 24:16-17, 31:16-24, 35:4-10; Ex. 9 (Sereno Tr.) 9:6-8; 10:6-11:2, 52:16-53:6; 56:8-57:24, 86:9-21; Ex. 10 (Kucker Decl.) ¶ 18; Ex. 11 (Urbine Decl.) ¶ 17; Ex. 12 (Sereno Decl.) ¶ 16; Ex. 14 (Filippone Decl.) ¶ 17; Ex. 15 (Bradshaw Decl.) ¶ 16.

## ARGUMENT

### I.    The FLSA's Remedial Goals Require the Court to Interpret its Coverage Expansively.

"The FLSA was designed to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'"  *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194(RMB)(DF), 2005 WL 3240472, at *3 (S.D.N.Y. Nov. 30, 2005) (quoting 29 U.S.C. § 202(a)).  Under the FLSA, aggrieved employees may bring a collective action on behalf of "themselves and other employees similarly situated."  29 U.S.C. § 216(b).  In furtherance of the FLSA's "broad remedial purpose," courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings.  *Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) (per curiam); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) ("[D]istrict courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs") (citation omitted).  Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by the pooling of resources," and enable the "efficient resolution in one proceeding of common issues of law and fact."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Under the FLSA, if an employer requires an employee to purchase her own "tools of the trade," the employer violates the FLSA "in any workweek when the cost of such tools purchased

6

by the employee cuts into the minimum or overtime wages required to be paid[.]"  29 C.F.R. § 531.35; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (finding employer liable for cost of the delivery worker employees' bicycles and motorbicycles and any necessary repair).  Furthermore, an employee "is entitled to a credit for expenses for 'facilities' that are 'primarily for the benefit or convenience of the employer."  *Yu G. Ke*, 595 F. Supp. 2d at 258 (citing 29 C.F.R. § 531.3(d)(1)).  Tools of the trade are defined a "facilities" that are "primarily for the benefit or convenience of the employer."  29 C.F.R. § 531.3(d)(2).  In proving such a claim, a plaintiff may rely on a reasonable estimate of her equipment-related expenses and need not show her actual expenses.  *Darrow v. WKRP MGMT. LLC*, No. 09 Civ. 01613, 2011 WL 2174496, at *4 (D. Colo. June 3, 2011) (citing cases); *Smith v. Pizza Hut, Inc.*, No. 09 Civ. 01632, 2011 WL 2791331, at *4 n. 4 (D. Colo. July 14, 2011).

## II.  Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's Remedial Goals.

The FLSA authorizes employees to maintain a collective action to recover unpaid wages where they are "similarly situated" and give their consent in writing to become a party.  *See* 29 U.S.C. § 216(b).  Such actions are designed to provide workers with an opportunity to "lower individual costs to vindicate rights by the pooling of resources," and enable the "efficient resolution in one proceeding of common issues of law and fact . . . ."  *Hoffmann-La Roche Inc.*, 493 U.S. at 170.  The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws.  *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30.").

In furtherance of the FLSA's "broad remedial purpose," *Braunstein*, 600 F.2d at 336, courts have discretion to implement Section 216(b) by facilitating notice to potential collective members. *Kassman v. KPMG LLP*, No. 11 Civ. 3743, 2014 WL 3298884, at *5 (S.D.N.Y. July 8, 2014) (citing *Myers*, 624 F.3d at 555 n.10).

Workers must receive timely notice in order for the "intended benefits of the collective action . . . to accrue." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007). The FLSA statute of limitations runs until a worker files a consent form. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Accordingly, time is of the essence because collective members' claims may be diminished or extinguished every day unless they receive prompt notice of the lawsuit. Notice curtails the erosion of their claims, *see Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 161 n.12 (N.D.N.Y. 2008), and furthers the FLSA's remedial goals. *Braunstein*, 600 F.2d at 336.

### III.    Plaintiffs Face a Low Burden on this Motion.

Plaintiffs face a minimal burden on this motion. The Second Circuit has endorsed "the two-step approach widely used by the district courts in this Circuit and by other circuit courts" for certification of collective actions under the FLSA. *Kassman*, 2014 WL 3298884, at *5 (citing *Myers*, 624 F.3d at 554-55). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id*. (internal quotation marks and citation omitted). "Once a court is satisfied that the first-stage inquiry has been

satisfied, it conditionally certifies the class and orders notice to putative class members, who are given the opportunity to opt in."[6]  *Id.* (internal quotation marks citation omitted).

To satisfy their burden, Plaintiffs "must make [only] a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  *Id.* (quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted).  The Second Circuit has emphasized that the standard of proof should remain "low" because "the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Kassman*, 2014 WL 3298884, at *5 (quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted); *see also Mazur*, 2005 WL 3240472, at *4 ("in deciding whether to authorize a collective action notice under the FLSA, the only issue for the Court is 'whether plaintiffs have demonstrated that potential class members are 'similarly situated.''") (quoting *Young v. Cooper*, 229 F.R.D. 50, 54 (S.D.N.Y.2005)).  "Because the standard at the first stage is fairly lenient, courts applying it typically grant[] conditional certification."  *Amador v. Morgan Stanley & Co.*, No. 11 Civ. 4326, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (internal citation and quotation marks omitted).

At the first step, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Kassman*, 2014 WL 3298884, at *5 (internal citation and quotation marks omitted).  "[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."  *Id*. at *6 (internal citation and quotation marks omitted).  "[A]ny factual variances that

---

[6]      "The second step, typically taken upon the completion of discovery, requires the court to determine, on a fuller record, . . . whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Kassman*, 2014 WL 3298884, at *5 (quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted).  "The action may be 'de-certified' if the record reveals that they are not[.]"  *Id.*

may exist between the plaintiff and the putative class do not defeat conditional class certification." *Amador*, 2013 WL 494020, at *3 (internal quotation marks and citation omitted). The relevant question "is not whether Plaintiffs and [potential collective members are] identical in all respects, but rather whether they were subjected to a common policy[.]" *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011) (internal citation and quotation marks omitted).

"The burden imposed at the first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are *actually* 'similarly situated.'" *Amador*, 2013 WL 494020, at *4 (internal quotation marks, citation, and brackets omitted); *see Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158-59 (S.D.N.Y. 2014) (holding that "courts generally grant conditional certification" because "the determination that plaintiffs are similarly situated is a preliminary one").

Courts generally rely on the allegations of the complaint and employee declarations to grant conditional certification. *See, e.g.*, *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145, 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010) (requiring any more than the pleadings and concise affidavits "would undermine the purpose of the FLSA … and would be inconsistent with the level of specificity that courts consistently require at the notice stage") (internal citation omitted).

## IV.   <u>Plaintiffs Comfortably Meet Their Low Burden.</u>

Plaintiffs' showing is sufficient to meet their low burden.  Plaintiffs allege that they and other Pet Stylists and Grooming Assistants are similarly situated with respect to the same FLSA violation – Petco's policy of taking unlawful deductions from Plaintiffs' and other similarly

situated employees' wages, including the cost of purchasing and maintaining grooming

equipment required to perform their jobs, and not paying them at least minimum wage and

overtime for hours worked.  ECF No. 10 (1st Am. Compl.) ¶¶ 3, 107-112, 127, 140, 152, 169,

181, 195, 207, 218, 238.

Plaintiffs support their allegations with their declarations, deposition testimony from

Plaintiffs Kucker and Sereno, Petco's job postings for Pet Stylist and Grooming Assistant

positions in various states, and other Petco documents.  This evidence shows that all Pet Stylists

and Grooming Assistants had substantially similar job duties, compensation, and terms and

conditions of work.

Petco may argue that for some period of time their "formal" pay policy was to provide

some equipment to Pet Stylists and Grooming Assistants.  Such an argument is inappropriate at

the first step and "misconstrues the nature of the court's analysis at this stage." *Bijoux v.*

*Amerigroup New York, LLC*, No. 14 Civ. 3891, 2015 WL 4505835, at *5 (E.D.N.Y. July 23,

2015) (rejecting an identical argument and stating "[a]t this conditional certification stage, the

focus of the inquiry is not on whether there has been an actual violation of law but rather on

whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to

their allegations that the law has been violated.") (internal quotation marks and citation omitted).

"[T]he question of whether [the employer's pay] policies were in fact illegal takes a back seat to

the paramount issue of whether the plaintiffs are similarly situated as to their allegations

concerning the allegedly unlawful policies."  *Id.*

Here, Petco's policy uniformly required Pet Stylists and Grooming Assistants to purchase

the tools necessary to execute their job.  This equipment consistently includes: electric clipper

set, nail clippers, blades, brushes, scissors, combs and shedding tools, and such equipment is

necessary and for Petco's benefit because without it Pet Stylists and Groomers could not do their

jobs.  Ex. 10 (Kucker Decl.) ¶ 10-12; Ex. 11 (Urbine Decl.) ¶ 11, 18; Ex. 12 (Sereno Decl.) ¶ 11,

17; Ex. 13 (Doidge) ¶¶ 11, 17; Ex. 14 (Filippone Decl.) ¶ 11, 18; Ex. 15 (Bradshaw Decl.) ¶ 11,

17.  This equipment also caused Pet Stylists and Groomers to earn less than the minimum wage

for the hours they worked in weeks they purchased or maintained this equipment.  Ex. 8 (Kucker

Tr.) 24:16-17, 31:16-24, 35:4-10; Ex. 9 (Sereno Tr.) 9:6-8, 10:6-11:2, 52:16-53:6, 56:8-57:24,

86:6-21; Ex. 10 (Kucker Decl.) ¶ 18; Ex. 11 (Urbine Decl.) ¶ 17; Ex. 12 (Sereno Decl.) ¶ 16; Ex.

14 (Filippone Decl.) ¶ 17; Ex. 15 (Bradshaw Decl.) ¶ 16.

Courts in this Circuit routinely grant conditional certification based on similar evidence

and allegations that employers required employees to purchase tools of the trade and such

purchases brought their weekly income under the minimum wage.  *See, e.g.*, *Dolinski v. Avant*

*Bus. Serv. Corp.*, No. 13 Civ. 4753, 2014 WL 316991, at *5-6 (S.D.N.Y. Jan. 28, 2014) (granting

conditional certification where employees claimed employer required them to purchase a

company radio and metro cards); *Wang v. Hearst Corp.*, No. 12 Civ. 793, 2012 WL 2864524, at

*1 (S.D.N.Y. July 12, 2012) (conditionally certifying a class of interns who the employer

required to purchase college credit, which plaintiffs alleged amounted to an illegal deduction);

*Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2011 WL 1770827, at *3 (S.D.N.Y. May 9,

2011) (conditionally certifying a collective where employees claimed employer unlawfully

deducted a percentage of wine sales from the tip pool each night).[7]

---

[7]      Courts in other Circuits also consistently certify collectives bringing unlawful deduction
claims.  *See, e.g.*, *Bellaspica v. PJPA, LLC*, 3 F. Supp. 3d 257, 259 (E.D. Pa. 2014)
(conditionally certifying a collective where delivery workers incurred vehicle-related expenses);
*Perrin v. Papa John's Int'l, Inc.*, No. 09 Civ. 01335, 2011 WL 4089251, at *5 (E.D. Mo. Sept.
14, 2011) (same); *Smith v. Pizza Hut, Inc.*, No. 09 Civ. 01632, 2011 WL 2791331, at *5-6 (D.
Colo. July 14, 2011) (same); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d

V.     **The Court Should Approve Plaintiffs' Proposed Notice and Notice Process.**

    A.     **Plaintiffs' Proposed Notice Is Timely, Accurate, and Informative.**

The Court should approve Plaintiffs' proposed Collective Action Notice and Consent to Join form. Ex. 18 (Notice and Consent to Join Form). The Notice is "accurate" and "informative" and is consistent with the model notices published by the Federal Judicial Center.[8] *See Hoffmann-La Roche Inc.*, 493 U.S. at 172.

    B.     **The Notice Should Be Sent to All Pet Stylists and Groomers Who Worked Within Three Years of the Filing of this Motion.**

If the Court grants this Motion, it should authorize the Notice to be sent to all Petco Pet Stylists and Groomers who worked at any time between April 28, 2012 and the date on which the Court grants this Motion (the "Collective") for people who worked in New York, New Jersey, Connecticut, and Kansas, and to all Petco Pet Stylists and Groomers who worked in any other state at any time between August 31, 2012 and the date on which the Court grants this Motion, for all other states.[9]

The Court should toll the statute of limitations for all Collective Members from August 31, 2015, the date on which Plaintiffs filed their motion. Courts routinely allow for tolling during the pendency of a motion for conditional certification. *See, e.g.*, *Kassman*, 2014 WL 3298884, at *9 (tolling statute of limitations from date on which plaintiffs filed their motion for conditional certification); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("the delay caused by the time required for a court to rule on a motion, such as

---

117, 126 (E.D.N.C. 2011) (conditionally certifying a collective of employees who alleged their transportation and border crossing fees, and visa expenses were illegal deductions).

[8]     *See* http://www.fjc.gov/ (Class Action Notices page) (last visited July 12, 2015).

[9]     The parties entered into a tolling agreements with respect to the FLSA claims of Pet Stylists and Grooming Assistants who worked in New York, New Jersey, Connecticut, and Kansas. *See* Exs. 5, 17 (Tolling Agreements).

one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine") (internal quotation marks and citations omitted).

### C.   The Court Should Order Petco to Produce Contact Information for the Collective.

In order to facilitate notice, Plaintiffs request that the Court order Petco to produce a computer-readable list of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Collective Members, and the Social Security numbers of those Collective Members whose notices are returned undeliverable.  The production of such contact information is consistent with "the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in[.]"  *Morris v. Lettire Constr. Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  Courts routinely grant such requests.  *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 130 (S.D.N.Y. 2014) (ordering production of computer-readable list of all names, addresses, telephone numbers, e-mail addresses, and social security numbers for distribution of notice); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013) (requiring defendants to supply a "computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, work locations, e-mail addresses, dates of employment, dates of birth, and last four digits of the individuals' Social Security numbers."); *Ack v. Manhattan Beer Distribs., Inc.*, No. 11 Civ. 5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (ordering the production of names, addresses, phone numbers, and e-mail addresses); *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, . . . email notice in addition to notice by first class mail is entirely appropriate."); *Gambino v.*

14

*Harvard Prot. Servs. LLC*, No. 10 Civ. 983, 2011 WL 102691, at *2 (S.D.N.Y. Jan. 11, 2011) (ordering the production, in a computer-readable format, of names, mailing addresses, telephone numbers, and email addresses of potential opt-in plaintiffs).

Plaintiffs propose disseminating notice by mail and e-mail, with reminder notices before the end of the opt-in period, supplemented by production of telephone numbers, so that Plaintiffs can effectively inform potential Opt-Ins of their rights.  E-mail notice is an efficient and inexpensive complement to mailed notice.  Courts routinely approve the inclusion of e-mail addresses with other contact information for notice purposes, in recognition of the growing preference for communication by that method.  *See, e.g.*, *Cranney v. Carriage Servs., Inc.*, No. 07 Civ. 1587, 2008 WL 608639, at *5 (D. Nev. Feb. 29, 2008) (ordering production of e-mail addresses and telephone numbers with other contact information upon conditional certification); *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *3 (S.D.N.Y. Feb. 19, 2008) (ordering production of e-mail addresses); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (ordering production of e-mail addresses *sua sponte*); *Underwood v. NMC Mortg. Corp.*, 245 F.R.D. 720, 724 (D. Kan. 2007) (same); *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 364-65 (W.D. Mo. 2007) (same).

Here, disseminating the Notice by mail and e-mail will help ensure that the Court-ordered Notice will be effective in reaching prospective opt-ins and informing them of their rights.  Mailed Notice inevitably fails to reach every single class member.  Corporate address databases sometimes contain errors.  Working people, deluged with mail and busy with the concerns of daily life, may not recognize the Court-issued Notice in a pile of junk mail and bills.  It is also inevitable that some recipients will misunderstand the Notice's significance or requirements.  In

addition, individuals no longer working for Petco may have moved, perhaps more than once, since leaving Petco, and they may not receive forwarded Notice by mail.

Plaintiffs also request the Court also authorize Plaintiffs to create standalone website through which opt-ins can electronically submit their claim forms. *See Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 WL 5557489, at *3-4 (S.D.N.Y. Nov. 3, 2014) (granting plaintiff's request for two stand-alone websites containing a notice and consent form); *see also Nobles v. State Farm Mut. Auto. Ins. Co.*, 10 Civ. 04175, 2011 WL 3794021, at *10 (W.D. Mo. Aug. 25, 2011) *modified on reconsideration*, 2011 WL 5563444 (W.D. Mo. Nov. 15, 2011) (granting plaintiff permission to publish an internet website with a consent to join form).

The Court should also authorize Plaintiffs to send the proposed Reminder Postcard, attached as Exhibit 19, by U.S. Mail and an identical e-mail reminder, part-way through the notice period.  It is well-documented that people often disregard collective action notices.  *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008).  Courts in this Circuit regularly authorize reminder notices in order to increase the likelihood that collective members receive notice of their rights.  *See Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (authorizing reminder notice "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in"); *Morris*, 896 F. Supp. 2d at 275 (same); *see also Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 466 (E.D.N.Y. 2014) (authorizing reminder notices); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) (same); *Limarvin v. Edo Rest. Corp.*, No. 11 Civ. 7356, 2013 WL 371571, at *3-4 (S.D.N.Y. Jan. 31, 2013) (same).  Defendant has no reason to oppose a reminder mailing other than that it may increase the participation rate, which

is not a good reason.  Plaintiffs will bear the cost of the reminder mailing, and the reminder mailing will not change the end of the notice period.  Defendant will not be prejudiced at all.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the proposed Collective; (2) order Petco to produce the computer-readable list described above; (3) authorize Plaintiffs to mail and email the proposed Notice and Consent to Joint form and the Reminder Postcard to the Collective; and (4) authorize the creation on an interactive standalone website through which the Collective can submit Consent to Join forms.

Dated:  August 31, 2015
      New York, New York

Respectfully submitted,

By:    /s/ Molly A. Brooks
        Molly A. Brooks

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Molly A. Brooks
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Email: jms@outtengolden.com
Email: mb@outtengolden.com
Email: sabrahamson@outtengolden.com

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz, *pro hac vice* motion forthcoming
Susan H. Stern, *pro hac vice* motion forthcoming
1515 S. Federal Hwy, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Email: gshavitz@shavitzlaw.com
Email: sstern@shavitzlaw.com

17

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375
Email: bschaffer@fslawfirm.com
Email: fmazzaferro@fslawfirm.com