UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTINA KUCKER, SONNY URBINE, HILLARY ANDERSON, MAGDA ALEXANDRA SERENO, AMY DOIDGE, JILL FILIPPONE, and HEATHER BRADSHAW, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  -against-<br><br>PETCO ANIMAL SUPPLIES STORES, INC.,<br><br>    Defendant. | Case No. 14 Civ. 9983 (DCF)<br><br>ECF CASE<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

TABLE OF CONTENTS

PAGE

I.  PRELIMINARY STATEMENT .................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ..................................................... 3

    A.  Staffing of Petco's Grooming Salons .................................................. 3

    B.  Petco Provided Bathing and Grooming Tools to the Grooming Salons at Different Times in Different States........................................................... 4

        1.  Bathing Tools.................................................................................. 4

        2.  Grooming Tools.............................................................................. 5

    C.  Petco's Grooming Assistants and Pet Stylists are Paid Pursuant to Four Distinctly Different Pay Plans ............................................................... 6

        1.  Grooming Pay Plan A ..................................................................... 6

        2.  Grooming Pay Plan B ..................................................................... 6

        3.  Grooming Pay Plan C ..................................................................... 8

        4.  Pilot Grooming Pay Plan in Petco Region 22 ................................. 8

III.  LEGAL ARGUMENT .............................................................................. 8

    A.  The Standard for Granting Conditional Certification ............................ 8

    B.  Plaintiffs Are Not Similarly Situated With Respect to a National Collective of Grooming Assistants and Pet Stylists ............................... 10

        1.  Plaintiffs Are Not Similarly Situated to the National Collective to the Extent That They Were Not Employed During the Limitations Period ............................................................................................ 11

        2.  Plaintiffs Are Not Similarly Situated to the Collective Because They Have Not Been Employed Since Petco Provided Grooming Kits and Bathing Kits to the Grooming Salons..................................... 13

        3.  Sereno is Differently Situated from the Collective.......................... 14

        4.  Grooming Assistants Are Not Similarly Situated to Pet Stylists............ 15

        5.  Plaintiffs Are Not Similarly Situated to Collective Members Who Were Paid Pursuant to Different Pay Plans ................................... 15

        6.  Plaintiffs Are Not Similarly Situated to Collective Members In States or Municipalities With Different Minimum Wages ..................... 17

    C.  Plaintiffs Have Not Demonstrated that they Were Subject to a Common Plan or Policy that Violated the Law within the Applicable Limitations Period ................................................................................................. 20

TABLE OF CONTENTS
(CONTINUED)

D.   Plaintiffs' Proposed Notice Should Be Revised to Reflect the Correct Time Periods, its Language Should Be Accurate, and a Distinction Must Be Made Between Pet Stylists and Grooming Assistants.................................... 22

E.   Notice To Potential Collective Class Members Should Be Handled By A Third-Party Administrator ................................................................... 24

IV.   CONCLUSION.............................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ahmed v. T.J. Maxx Corp.,*
2013 WL 2649544 (E.D.N.Y. June 8, 2013) ........................................................22

*Anglada v. Linens 'N Things,*
2007 WL 1552511 (S.D.N.Y. Apr. 26, 2007).......................................................13

*Bacon v. Eaton Aeroquip, LLC,*
2012 WL 6567603 (E.D. Mich. Dec. 17, 2012) ...................................................10

*Bah v. Shoe Mania, Inc.,*
2009 WL 1357223 (S.D.N.Y. May 13, 2009) ......................................................23

*Barfield v. N.Y. City Health & Hosps. Corp.,*
2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005)........................................................9

*Bijoux v. Amerigroup N.Y., LLC,*
2015 WL 4505835 (E.D.N.Y. July 23, 2015)......................................................10

*Brickey v. Dolgencorp, Inc.,*
272 F.R.D. 344 (W.D.N.Y. 2011).................................................................14, 22

*Cohan v. Columbia Sussex Mgmt.,*
2013 WL 8367807 (E.D.N.Y. Sept. 19, 2013) ....................................................23

*Eng-Hatcher v. Sprint Nextel Corp.,*
2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009)......................................................22

*Foster v. Food Emporium,*
2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000).......................................................14

*Guillen v. Marshalls of MA, Inc.,*
750 F. Supp. 2d 469 (S.D.N.Y. 2010)...................................................................10

*Guillen v. Marshalls of MA, Inc.,*
841 F. Supp. 2d 797 (S.D.N.Y. 2012)......................................................................9

*Hoffman-La Roche, Inc. v. Sperling,*
493 U.S. 165 (1989).............................................................................................9, 24

*In re Penthouse Exec. Club Compensation Litig.,*
2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010).......................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*J.S. v. Attica Central Schools,*
2006 WL 581187 (W.D.N.Y. Mar. 7, 2006)..........................................................................24

*Jenkins v. TJX Cos.,*
853 F. Supp. 2d 317 (E.D.N.Y. 2012) ....................................................................................9

*Laroque v. v. Domino's Pizza, LLC,*
557 F. Supp. 2d 346 (E.D.N.Y. 2008) ..........................................................................12, 13

*Lewis v. Wells Fargo & Co.,*
669 F. Supp. 2d 1124 (N.D. Cal. 2009) ...............................................................................25

*Lujan v. Cabana Mgmt.,*
2011 WL 317984 (E.D.N.Y. Feb. 1, 2011)..........................................................................13

*Matthews v. Petco Supplies Stores, Inc.,*
Case No. BC539637 (Sup. Ct. L.A. Cnty. Cal. Sept. 4, 2015) .................................12

*Morales v. Plantworks, Inc.,*
2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ...........................................................................22

*Myers v. Hertz Corp.,*
624 F.3d 537 (2d Cir. 2010)....................................................................................................9

*Sharma v. Burberry Ltd.,*
52 F.Supp.3d 443, 459-60 (E.D.N.Y. 2014) .......................................................................13

*Smith v. Tradesmen Int'l, Inc.,*
289 F. Supp. 2d 1369 (S.D. Fla. 2003) ................................................................................13

*Trinidad v. Pret A Manger (USA) Ltd.,*
962 F.Supp.2d 545 (S.D.N.Y. 2013)....................................................................................13

**FEDERAL STATUTES**

29 U.S.C. § 206 (a)(1)(c) ......................................................................................................17

29 U.S.C. § 216(b) .............................................................................................................8, 9

29 U.S.C. § 255(a) ................................................................................................................11

29 U.S.C. § 256.....................................................................................................................23

FLSA ("Fair Labor Standards Act"). ...................................................................... passim

# TABLE OF AUTHORITIES

**Page(s)**

**STATE AND LOCAL STATUTES AND ORDINANCES**

43 Pa. Stat. Ann. § 333.104 ...................................................................................18

820 Ill. Comp. Stat. ................................................................................................19

Alaska Stat. § 23.10.065 ........................................................................................19

Albuquerque Code of Ordinances, § 13-12-3(B) (Am. Nov. 6, 2012) ..................19

Ariz. Rev. Stat. § 23-362 .......................................................................................19

Ark. Code Ann. §11-4-210 ......................................................................................8

Cal. Lab. Code § 1182.12 .......................................................................................19

Chicago Min. Wage Ordinance 1-24-020(a) .........................................................19

City of Seattle, Wash., Seattle Municipal Code § 14.19.030.A ............................19

Colo. Const. art. XVIII, §15 ...............................................................................8, 19

Conn. Gen. Stat. §31-58 ......................................................................................6, 18

D.C. Code § 32-1003(a)(4) .....................................................................................19

Del. Code Ann. Tit. 19, § 902 ................................................................................19

Fla. Const. art X, § 24 ............................................................................................19

Ga. Code. Ann. §34-4-3 ..........................................................................................17

Haw. Rev. Stat. § 387-2 .........................................................................................19

Idaho Code Ann. § 44-1502 ...................................................................................17

Ind. Code §22-2-2-4(g) ..........................................................................................17

Iowa Code § 91D.1 .................................................................................................17

Johnson Cnty. Code §4:7.1 .....................................................................................19

Kan. Stat. Ann. § 44-1203 ......................................................................................17

Kansas City Code of Ordinances Art. IV, Ch. 38 (July 16, 2015) ........................19

Ky. Rev. Stat. Ann. § 337.275 ...............................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

STATE AND LOCAL STATUTES AND ORDINANCES

Las Cruces Min. Wage Ordinance Art. II § 14-62(b) (Dec. 1, 2014) ..........................................19

Los Angeles CA Code § 187.02 (May 22, 2015) ..........................................................................19

Louisville Metro County Ord. § 112.04(b) ...................................................................................19

Mass Gen. Laws ch. 151, §1 ..........................................................................................................19

Md. Code Ann., Lab. & Empl. § 3-413 ..........................................................................................19

Me. Rev. Stat. Ann. Tit. 26, § 664 .................................................................................................18

Mich. Comp. Laws §408.414 .........................................................................................................19

Min. Stat. §177.24(b)(ii) ................................................................................................................19

Mo. Rev. Stat. §290.502 ............................................................................................................8, 19

Mont. Code Ann. § 39-3-409 .........................................................................................................19

Montgomery County Code Ch. 27, Art. XI (Nov. 26, 2013)..........................................................19

N.C. Gen. Stat. § 95-25.3 ...............................................................................................................18

N. D. Cent. Code § 34-06-22 .........................................................................................................18

N.H. Rev. Stat. Ann. § 279.21 .......................................................................................................18

N.J. Admin Code § 12:56-3.1 ........................................................................................................18

N.J. Stat. Ann. §34:11-56a4...........................................................................................................6, 18

N.M. Stat. Ann. § 50-4-22 ..........................................................................................................8, 19

N.Y. Lab. Law §652 .......................................................................................................................6, 18

Neb. Rev. Stat. § 48-1203 ..............................................................................................................19

Nev. Const. art. 15, § 16 ................................................................................................................17

Ohio Const. Art. II, § 34a ...............................................................................................................19

Okla. Stat. tit. 40, § 197.2 ..............................................................................................................18

Okla. Stat. tit. 40, §197.4 ...............................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

STATE AND LOCAL STATUTES AND ORDINANCES

Or. Rev. Stat. § 653.025 ..................................................................................................19

P.R. Laws Ann. Tit. 29 § 250 ..........................................................................................18

Prince George's County Labor Code, Subtitle 13A (2014) ..............................................19

R.I. Gen. Laws § 28-12-3 ................................................................................................19

S.D. Codified Laws § 60-11-3 .....................................................................................8, 19

San Francisco Minimum Wage Ordinance, § 12R.4(a)(1)(A) ..........................................19

Santa Fe Living Wage Ord. §28-1.5.B (Am. Jan. 1, 2008) ..............................................19

St. Louis Ordinance No. 70078, § 2l (May 29, 2015) ......................................................19

Tex. Lab. Code Ann. §§ 62.051, 62.151 .....................................................................8, 18

Utah Code Ann. § 34-40-104 ..........................................................................................18

Virginia Code Ann. § 40.1-28.10 ....................................................................................18

Vt. Stat. Ann. Tit. 21, § 384 ............................................................................................19

W. Va. Code § 21-5c-2 ....................................................................................................19

Wash. Rev. Code § 49.46.020(b) .....................................................................................18

Wis. Admin. Code DWD § 272.03 ..................................................................................18

Wyo Stat. Ann. § 27-4-202 ........................................................................................8, 18

## I.     PRELIMINARY STATEMENT

Plaintiffs bring this action alleging stale claims by a handful of former employees, years after they left employment with Petco.  This action raises a nominal issue which, at worst, was remedied long before the Complaint in this action was filed.  They now seek certification of a nationwide class of over 8,000 Pet Stylists and 11,000 Grooming Assistants who worked in over 1,400 stores in all 50 states, the District of Columbia and Puerto Rico, based upon outdated policies which were not in effect during the limitations period.  Plaintiffs' assertions are misleading, and, when compared to the contemporaneous evidence produced in discovery, fall short of even the modest standard applied by courts in determining whether or not to grant conditional certification to a national class under §216(b) of the Fair Labor Standards Act.

Plaintiffs' motion for conditional certification should be denied because they cannot show that they are "similarly situated" to the national collective of Pet Stylists and Grooming Assistants with respect to the claims asserted in this action.  Four of the six Plaintiffs were not employed in the positions at issue during the relevant limitations period of two years, and one was employed for a few months during the limitations period.  The only Plaintiff substantially employed during the limitations period alleges facts that are highly atypical, if not unique.

Additionally, four Plaintiffs were employed in the positions at issue entirely before the national rollout of Grooming Tool Kits commencing in late 2012, and are not similarly situated to the national collective of members who worked after Petco began providing Grooming Tool Kits to its grooming salons on a national basis in late 2012.  The analysis regarding whether or not Pet Stylists were required to purchase grooming tools is a fundamentally different analysis before and after Petco began providing grooming tools to the salons.

Third, Plaintiffs claim that they were required to purchase grooming tools to do their

1

jobs, and their FLSA claim in this action alleges that the money they spent on these purchases brought them below the *federal* minimum wage of $7.25 per hour.  However, minimum wage varies significantly by state and municipality, and there is no dispute that all members of the purported collective received either a base hourly rate of at least the *local* minimum wage or commission, whichever was more.  Whether or not any individual member of the purported class can state a claim for failure to pay the federal minimum wage will vary by state and local jurisdiction because they were paid in accordance with the local minimum wage.  For example, Plaintiff Sereno, who worked in Connecticut where the hourly minimum wage during her employment was $8.25 to $8.70, is not similarly situated to employees who received a base hourly rate equal to the federal minimum wage of $7.25, or to collective members in Washington, D.C., where the base hourly rate is $10.50 per hour.  Simply put, Plaintiffs are not similarly situated to employees in any of the 29 different states or several municipalities where Petco has stores with elevated minimum wages, where the local base hourly rate differs from that applicable to Plaintiffs' employment because it is at least equal to the local minimum wage.

Fourth, contrary to Plaintiffs' assertions, members of the purported nationwide collective were subject to at least four different pay plans.  Grooming Assistants in some states were eligible to receive commission, while others were not.  Collective members in one state receive a base rate plus additional incentive pay, rather than either the base rate or commission.  A fourth plan covering several states pays Pet Stylists an elevated base rate of $10.00 per hour, or commission, whichever is greater.  Plaintiffs are not similarly situated to any employees covered by a different pay plan.

Finally, Plaintiffs cannot show that they were subject to a common plan or scheme that violated the law during the relevant time period.  The record shows that Petco provided, pursuant

to its written policies in place during the relevant time period, all Grooming Salons with bathing kits for use by Grooming Assistants and Pet Stylists nationwide starting in June 2011, and provided all salons nationwide with grooming tool kits used by Pet Stylists to cut pet hair starting in late 2012, more than two years before the Complaint was filed.

Accordingly, Plaintiffs' motion for conditional certification should be denied.

## II.  STATEMENT OF RELEVANT FACTS

Petco is a national provider of retail pet supplies and pet services such as grooming and dog training.  Petco owns and operates more than 1,400 stores nationwide in all 50 states, the District of Columbia and Puerto Rico. (Weinand Decl. ¶¶ 1-2).[1]

### A.  Staffing of Petco's Grooming Salons.

Most Petco stores maintain Grooming Salons that provide grooming services such as cutting and styling pet hair, bathing, brushing and nail clipping of dogs and cats. (Weinand Decl. ¶¶1, 8).  All of Petco's employees who work in these salons are commonly referred to collectively as "salon partners."  They fall into four defined, distinct positions: Grooming Assistants, Pet Stylist Apprentices, Pet Stylists, and Grooming Salon Managers. (Weinand Decl. ¶1).

Grooming Assistants or "bathers" assist in scheduling Grooming Salon appointments, cleaning and maintaining the salon, and providing basic grooming services that do not require cutting pet hair, such as brushing, bathing, cleaning ears, and trimming nails.  The tools used by Grooming Assistants to perform their duties include brushes, combs, shampoos, deshedding tools, nail clippers and undercoat rakes. (Fuchs Decl. Ex. C;[2] Weinand Decl. ¶¶8, 11).  Grooming Assistants are not trained or certified to cut pet hair, and therefore are not permitted to do so.

---

[1] "Weinand Decl." refers to the accompanying Declaration of Wendy Weinand, with exhibits annexed thereto.
[2] "Fuchs Decl." refers to the accompanying Declaration of Stephen A. Fuchs, with exhibits annexed thereto.

Consequently, Grooming Assistants are not permitted to use tools needed to cut pet hair, such as electric clippers, blades and grooming shears, in the course of their duties. (Weinand Decl. ¶8).

Pet Stylists or "groomers" perform all the bathing, brushing and nail trimming services that Grooming Assistants provide, but also cut pet hair. Pet Stylists use electric clippers, several blades of different sizes used with such clippers, and grooming shears in the course of their duties. (Fuchs Decl. Ex. E; Weinand Decl. ¶9). Grooming Salon Managers are experienced Pet Stylists who have been promoted or hired into the position to supervise certain aspects of the Grooming Salon. (Fuchs Decl. Ex. F).

Grooming Assistants and new job applicants who have no experience cutting pet hair, but who wish to become Pet Stylists, may join Petco's Grooming Apprentice Program.[3] New hires who already have pet styling experience and who apply for a Pet Stylist position are required to complete a three-step technical skills assessment. If they pass the assessment, they commence work as a Pet Stylist. (Weinand Decl. ¶¶15-16).

In July 2014, Petco eliminated the Grooming Assistant position nationwide (excluding California), except for those salons with the highest sales volume. This staffing change eliminated the strong majority of Grooming Assistants. Today, Petco employs approximately 133 Grooming Assistants in nearly 1,500 Grooming Salons nationwide. (Weinand Decl. ¶17).

**B.    Petco Provided Bathing and Grooming Tools to the Grooming Salons at Different Times in Different States.**

**1.    Bathing Tools.**

Prior to 2011, Petco generally provided its grooming salons with a variety of bathing supplies, such as shampoos, ribbons, and brushes. In addition, Store management could order

---

[3] Pet Stylist Apprentices provide the basic bathing services that a Grooming Assistant performs, but they are in training to become Pet Stylists. In the course of their apprenticeship, they provide pet services requiring a haircut under the supervision of a Grooming Salon Mentor and/or a Grooming Salon Manager. (Weinand Decl. ¶8; Fuchs Decl. Ex. D). Pet Stylist Apprentices do not have to purchase tools. (Weinand Decl. ¶15).

any needed bathing and brushing supplies through Petco's Online Supply System ("OSS"). (Weinand Decl. ¶10).  However, until that time, no standardized kit of bathing and brushing tools had been formally provided to the grooming salons.  (Weinand Decl. ¶10).  In early 2011, Petco reviewed the bathing and brushing equipment available to the grooming partners in the salons through its OSS, and decided to expand and standardize the selection of bathing equipment available.  In June 2011, Petco commenced a national rollout which provided a standardized set of bathing and brushing supplies to each grooming salon nationwide.  Two complete Bathing Kits were shipped to each salon, which included all of the equipment needed for Grooming Assistants to perform all the duties of their position: (a) a hemostat ear hair puller; (b) a medium groom slicker brush; (c) a medium Furminator deshedding tool; (d) medium and large dog nail clippers; (e) a flea comb; and (f) a dematting tool.  (Weinand Decl. ¶11, Exs. A & B).  Additional equipment could be ordered, as needed, by store management through the OSS.  (Weinand Decl. ¶13-14, Exs. A & B).

### 2.    Grooming Tools.

Petco provided the tools required for Pet Stylists and Grooming Salon Managers to cut the hair of pets in a series of rollouts at different times in different states, commencing in California in 2010.  (Weinand Decl. ¶19).  In the fall of 2012, Petco made a decision to provide grooming tool kits to all of its grooming salons nationwide.  The tool kit contained all the equipment Pet Stylists need to cut pet hair:  (a) one Andis brand electric clipper; (b) a set of eight blades of different sizes for use with the electric clipper; and (c) a set of three Geib brand shears (scissors).  (Weinand Decl. ¶19-22, Exs. C-D).  The cost of the complete kit of grooming tools to Petco was approximately $218 per kit.  (Weinand Decl. ¶22, Ex. D at 4).

This initiative began with the Grooming Salons in Petco's New York State Stores. (Weinand Decl. ¶20, Ex. C).  Commencing in November 2012, Petco provided one grooming

tool kit to each salon for every two Pet Stylists.  After grooming kits were provided to all the salons in New York State, the Grooming Tool Kit rollout continued in the Tri-State area (New Jersey and Connecticut), followed by the northeast and Middle Atlantic States.  Petco's rollout of tool kits to the remainder of the country followed, and was completed by the end of the first quarter of 2013.  (Weinand Decl. ¶20-21, Exs. D, E).

### C.  Petco's Grooming Assistants and Pet Stylists are Paid Pursuant to Four Distinctly Different Pay Plans.

Petco's Grooming Assistants and Pet Stylists have been covered by several different pay plans during the relevant time period.

### 1.  Grooming Pay Plan A.

Under "Pay Plan A," which covers the stores in which all the Plaintiffs worked,[4] Grooming Assistants receive either minimum wage or commission (40% for a full service bath), whichever is greater, during a particular pay period.  (Barnett Decl. Ex. A, at 7).  Pet Stylists receive either commission (50% for a full service groom) or an hourly base pay, whichever is higher, for the pay period.  (*Id.* at 2).  The hourly base pay that they will earn in the event it exceeds commission in states applying the federal minimum wage is $7.65 per hour, or $.40 more an hour than the federal minimum wage of $7.25.  (*Id.* at 3).  However, in many states and municipalities where the minimum wage is higher than the federal minimum wage, such as New York, New Jersey and Connecticut,[5] Pet Stylists' base hourly rate is equal to the local applicable minimum wage (which is the same as the base hourly rate for Grooming Assistants).  (Barnett Decl. ¶4, Ex. A).

### 2.  Grooming Pay Plan B.

Grooming Assistants and Pet Stylists in Petco's stores in Minnesota, Iowa and Nebraska,

---

[4] A copy of Pay Plan A is annexed to the Declaration of Wayne Barnett ("Barnett Decl.") as Ex. A.

[5] The minimum wages in New York, New Jersey and Connecticut are currently $8.75, $8.38 and $9.15 per hour, respectively.  *See* N.Y. Lab. Law §652; N.J. Stat. Ann. §34:11-56a4; Conn. Gen. Stat. §31-58.

one store in Wisconsin and three in Illinois are paid pursuant to "Pay Plan B." Pay Plan B is the result of the past acquisition by Petco of the stores of a competitor, Pet Food Warehouse. (Barnett Decl. ¶7).  Both Grooming Assistants and Pet Stylists are paid differently under Pay Plan B.  Unlike Grooming Assistants subject to Pay Plan A, Grooming Assistants under Pay Plan B are *not eligible for commission*, but *only* receive an hourly wage which commences at the local minimum wage, which can increase on a regular basis up to a certain amount above the local minimum wage.[6]  Grooming Assistants in states applying the federal minimum wage currently earn between $7.25 to $8.00 per hour, with no commission.  In states and municipalities where the local minimum wage is higher than $7.25, Grooming Assistants' base hourly rate is the local minimum wage, and increases in regular increments.  (Barnett Decl. ¶7, Ex. B, at 2-3).

Pet Stylists subject to Pay Plan B are also paid differently than those subject to Pay Plan A.  They are qualified to receive 55% commission if they have completed and passed a three breed technical grooming course, and are eligible for 60% commission if they have "Senior Level Grooming Skills" (meaning they are experienced and have demonstrated an advanced expertise over a period of either 6 or 12 months and are available to work a flexible schedule). Moreover, the Pet Stylists' base hourly rate (which they would receive in the event it exceeds commission) also differs under Pay Plan B.  While the minimum hourly rate is $7.65 for Pet Stylists in states applying the federal minimum wage of $7.25, Pay Plan B also permits regular increases of the hourly base rate for Pet Stylists up to $9.00 per hour.   In states and municipalities where the minimum wage is higher than $7.65, Pet Stylists receive the local minimum wage and are eligible for regular increases in their hourly base rate. (Barnett Decl. ¶8, Ex. B).

---

[6] A copy of the current version of Pay Plan B, effective August 28, 2015, is annexed to the Barnett Decl. as Exhibit B.

### 3.      Grooming Pay Plan C.

In June of 2015, Petco commenced a third pay plan, Grooming Pay Plan C, which applies to salon partners in Petco's grooming salons in California[7] and involves a different pay structure. Salon partners covered by Pay Plan C are paid a base hourly rate – $9.00 an hour for Grooming Assistants and $10.00 an hour for Pet Stylists – and receive a production incentive for the performance of services based on their weekly gross sales.   The production incentive is calculated based upon several criteria, such as achieving certain sales thresholds. (Barnett Decl. ¶9, Ex. C, at 2-4).

### 4.      Pilot Grooming Pay Plan in Petco Region 22.

Commencing on June 22, 2014, Petco began a pilot program in its Region 22, which consists of many of its stores in Arkansas, Texas, Colorado, New Mexico, Wyoming, and Oklahoma, one in Missouri and one in South Dakota.  Pursuant to the Pilot Grooming Pay Plan, Grooming Assistants earn either the federal or local minimum wage,[8] whichever is higher, or commissions (40% for a full service bath).  Pet Stylists, however, earn a minimum hourly rate of $10.00 or commissions (50% for a full service groom).  (Barnett Decl. ¶10, Ex. D).

## III.     LEGAL ARGUMENT

### A.     The Standard for Granting Conditional Certification.

The FLSA does not expressly – or impliedly – allow judicial intervention through the "authorized notice" that Plaintiff seeks in this Motion.  The Act simply permits an individual to bring an action for unpaid overtime on behalf of themselves "and other employees similarly situated." 29 U.S.C.  § 216(b).  Whether the Court elects to intervene in these proceedings as

---

[7] As noted in footnote 10 below, the FLSA claims of California Grooming Assistants and Pet Stylists have been settled in separate litigation, but effective coverage dates of the settlement end May 15, 2015.

[8]  Texas, Oklahoma and Wyoming apply the current federal minimum wage of $7.25. Tex. Lab. Code Ann. §§ 62.051, 62.151; Okla. Stat. tit. 40, §197.4; Wyo Stat. Ann. § 27-4-202.  Colorado's hourly minimum wage is $8.23 per hour. Colo. Const. art. XVIII, §15; Colorado Minimum Wage Order (2014); New Mexico's minimum wage is $7.50 per hour.  N.M. Stat. Ann. § 50-4-22.  Arkansas, Missouri, and South Dakota's minimum wages are $7.50, $7.65 and $8.50, respectively.  Ark. Code Ann. §11-4-210; Mo. Rev. Stat. §290.502; S.D. Codified Laws § 60-11-3.

Plaintiffs request is a matter committed to the Court's sound discretion. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (holding that district courts "have discretion, *in appropriate cases* . . . to implement" the Section 216(b) collective action mechanism (emphasis added)). Courts in this Circuit customarily decide, in their discretion, whether to conditionally certify a collective action by means of a two-step inquiry. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred. . . . The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (citations omitted).

While a plaintiff's burden at this stage may be modest, conditional certification is not automatic, and cannot be based on pure speculation or assumption. It must be supported by evidence showing that the requisite commonality and alleged common policy or plan that violated the law exists. *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 324-25 (E.D.N.Y. 2012) (denying collective certification based upon conclusory allegations). Courts will deny collective certification when plaintiffs present a dearth of evidence supporting these two elements. *Id.* at 325 (conditional certification denied where plaintiff relied solely on his own testimony); *Barfield v. N.Y. City Health & Hosps. Corp.*, 2005 WL 3098730, at * 1 (S.D.N.Y. Nov. 18, 2005) (plaintiff presented "nothing but limited anecdotal hearsay to suggest that there is a widespread [policy that violated the law] . . . and no evidence whatsoever that this is a widespread policy" of the defendants). "Rather, the Plaintiff must provide 'actual evidence of a factual nexus between his situation and the persons he claims are similarly situated.'" *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) (citations omitted) (denying conditional certification

where plaintiff failed to provide any proof that he was similarly situated to assistant store managers across the nation).  Moreover, where plaintiffs "have been afforded discovery on the issue of whether or not the action should proceed as a collective action, courts apply a more restrictive, but still lenient standard, requiring the plaintiffs to demonstrate at least 'modest' factual support for the class allegations in the complaint." *Bacon v. Eaton Aeroquip, LLC*, 2012 WL 6567603, at *3 (E.D. Mich. Dec. 17, 2012) (citations omitted).

As set forth below, Plaintiffs have failed to meet this burden, as they present no basis for the Court to conclude that they are similarly situated to a national collective of Grooming Assistants and Pet Stylists.  Nor can they show that a nationwide collective of such employees were subject to a common policy or plan that violated the law.

### B.    Plaintiffs Are Not Similarly Situated With Respect to a National Collective of Grooming Assistants and Pet Stylists.

To establish that they are "similarly situated" to Petco's other employees, Plaintiffs must establish that they are similarly situated "with respect to the FLSA violations they allege – not other factors." *Bijoux v. Amerigroup N.Y., LLC*, 2015 WL 4505835, at *3 (E.D.N.Y. July 23, 2015), *adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015) (the law looks to whether the plaintiffs "are similarly situated 'with respect to their allegations that the law has been violated'") (additional citations omitted).  Here, Plaintiffs assert, essentially, one FLSA violation – that because they were allegedly required to purchase their own grooming and bathing tools to perform their work duties, those expenses brought their pay below the applicable minimum wage during certain pay periods in which they incurred such expenses.  (Am. Compl., ECF No. 10, ¶¶3, 107-111).  The relevant inquiry, then, is not whether Pet Stylists and Grooming Assistants were subject to uniform policies or had similar job duties (as argued in pages 3 to 4 of Plaintiffs' brief).  *See Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 477-78 (S.D.N.Y. 2010) (the

existence of standardized operational procedures and policies "does little to add to the inference that employees nationwide were similarly situated"). The relevant inquiry, instead, is whether or not their alleged tool purchases brought their wages below the *federal* minimum wage for any specific pay period within the limitations period. As explained more fully below, Plaintiffs are not similarly situated to a national collective of over 8,000 Pet Stylists and over 11,000 Grooming Assistants nationwide for at least six different reasons supported by the current record.

### 1.   Plaintiffs Are Not Similarly Situated to the National Collective to the Extent That They Were Not Employed During the Limitations Period.

The statute of limitations for a claim for failure to pay minimum wages under FLSA is two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). Considering the changes to Petco's practices – with no formal practice in place prior to 2011 and the rollouts of bathing and grooming kits starting in June 2011 and November 2012, respectively – the only evidence that is truly probative of the Company's practices is testimony regarding purchases that occurred during the relevant two year FLSA period, as they will be unable to show willfulness on a national basis after the tools were supplied to the salons.

Inexplicably, however, Plaintiffs submit declarations from the two New York Plaintiffs, Kristina Kucker and Sonny Urbine, in support of their motion – *neither of whom assert FLSA claims.* (*See* Am. Compl., ECF No. 10, ¶¶5, 11, 14, 105; *see also* Kucker Dep. 13:23-14:4[9] (testifying that her last day of employment was December 19, 2008); Urbine Decl. ¶1[10] (testifying that his last day of employment with Petco was September 10, 2010)). Plaintiff Doidge claims that she was employed by Petco until June 2013, but only worked as a Pet Stylist

---

[9] Excerpts of the deposition transcripts of Plaintiffs Kucker and Sereno are annexed to the Fuchs Declaration as Exhibits A and B, respectively.

[10] The Declarations of the six Plaintiffs are annexed to the Brooks Declaration as Exhibits 10-15.

from January to June 2012, when she was promoted to Grooming Salon Manager – a position
that is not part of the purported collective in this case – some 30 months before the filing of the
Complaint.  (Doidge Decl. ¶ 1).  Plaintiff Bradshaw testifies that she left Petco in December
2012 – two years prior to the filing of the Complaint.  (Bradshaw Decl. ¶1).  These plaintiffs
cannot be similarly situated to the national collective, who were employed during a time period
that had different bathing and grooming tool practices.[11]

The only Plaintiffs with potential two year FLSA claims are Plaintiffs Fillipone and
Sereno.  Fillipone was employed as a Pet Stylist in New Jersey until May 2013 (less than five
months into the limitations period) and stated that she purchased her tools when she was hired in
December 2011 (prior to the limitations period).  (Fillipone Decl. ¶ 11).  Sereno was employed
as a Grooming Assistant in Connecticut from July 2011 to July 2014, and testified that she
purchased her tools in April and May 2012 (also outside the limitations period).  (Sereno Dep.
25:23-28:19).  That is one Grooming Assistant – out of over 11,000 – and one Pet Stylist – out of
over 8,000 – attesting to the practices that existed in two stores before the limitations period even
began.  Put differently, Plaintiffs have only proffered evidence of the practices in two stores out
of the over 1,400 stores nationwide.  (None of the Plaintiffs testified to practices that occurred
outside their own stores).[12]  Simply, the brief tenure of one New Jersey Pet Stylist, Fillipone, and
the oddball claims of one Connecticut Grooming Assistant, Sereno,[13] regarding purchases that

---

[11] The claims of Plaintiff Hillary Anderson and all California Grooming Assistants and Pet Stylists under the FLSA
were recently settled in a California State Court action, *Matthews v. Petco Supplies Stores, Inc.*, Case No. BC539637
(Sup. Ct. L.A. Cnty. Cal. Sept. 4, 2015).  A copy of the Order Granting Final Approval of Class Action Settlement
in that case is attached to the Fuchs Declaration as Exhibit H.

[12] The testimony in Plaintiffs' declarations regarding other employees' purchases of tools within the Plaintiffs'
stores is hearsay outside of their personal knowledge, and is inadmissible.  *See Laroque v. v. Domino's Pizza, LLC*,
557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (denying class certification for Brooklyn-area stores where plaintiffs'
factual support regarding the situation of the employees . . . is reduced to hearsay").

[13] As set forth below, Plaintiff Sereno makes the highly atypical, if not unique, claim that she was required to
purchase tools to cut pet hair even though she was not a Pet Stylist and was prohibited from – *and testified she never
did* – use such tools in her job as a Grooming Assistant.  (*See* Sereno Dep. 22:6-27:8, 32:13-23; Fuchs Decl. Ex. C).

occurred outside the limitations period are inadequate evidence to certify a nationwide collective of Pet Stylists and Grooming Assistants. *See, e.g., Anglada v. Linens 'N Things*, 2007 WL 1552511, at *4-6 (S.D.N.Y. Apr. 26, 2007) (refusing to conditionally certify a nationwide class of employees of defendant Linens 'N Things, which operated in 47 states, given "a total dearth of factual support" for a nationwide class, as the plaintiff lacked personal knowledge of the policies and practices at other stores); *Sharma v. Burberry Ltd.*, 52 F.Supp.3d 443, 459-60 (E.D.N.Y. 2014) (declaration from plaintiffs and declarants from two states not enough to certify nationwide class); *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (three identical affidavits insufficient to establish nationwide class).

In light of the absence of any evidence to support conditional certification of over 99% percent of Petco's other stores, this Court should limit conditional certification to, at most, the stores where Plaintiffs Fillipone and Sereno worked. *See, e.g., Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 558-60 (S.D.N.Y. 2013) (conditionally certifying only six of the defendants' 33 stores, because the factual allegations were limited to the locations where the plaintiffs worked); *Lujan v. Cabana Mgmt.*, 2011 WL 317984, at *7-8 (E.D.N.Y. Feb. 1, 2011) (conditionally certifying employees at three New York restaurants based on declarations from workers representing each location, but declining to certify employees at the three Florida restaurants because the court lacked "firsthand evidence of violations"); *Laroque*, 557 F. Supp. 2d at 356 (S.D.N.Y. 2008) (conditionally certifying employees at the store where plaintiffs worked, but declining to certify employees at five other stores where the evidence relating to those five stores amounted to hearsay statements and "generalized allegations of wrongdoing").

     **2.**    **Plaintiffs Are Not Similarly Situated to the Collective Because They Have Not Been Employed Since Petco Provided Grooming Kits and Bathing Kits to the Grooming Salons.**

As set forth above, whether or not Petco provided bathing tool kits and grooming tool kits

to the Grooming Salons varied by time and by location.  Pet Stylists, such as Plaintiffs Kucker, Urbine, Bradshaw and Doidge – who were employed as Pet Stylists exclusively *before* the national rollouts of grooming tool kits nationwide commencing in November 2012 – are not similarly situated to those who were employed *after* the rollout.

Moreover, the potential FLSA claims of the collective members differ before and after the national rollout.   Prior to the rollout, members of the collective who were Pet Stylists will claim, as alleged in the amended complaint, that they were required to purchase grooming equipment at their own expense (*see, e.g.,* Kucker Decl. ¶¶10-12).  However, those Pet Stylists who worked in the Grooming Salons after the rollout, and particularly in Petco's newer stores that were opened at the time of or after the rollout, cannot dispute that the grooming kits were provided to the Grooming Salons. (*See* Weinand Decl. ¶24; Davis Decl. ¶¶ 2-9).  To the extent these "post-rollout" collective members may claim they incurred expenses for the tools required to do their jobs, such claims will presumably be related to allegations that the company provided tools were inadequate, unavailable, or not properly maintained.   Plaintiffs make no such allegations, as they do not acknowledge that tools were provided by Petco during the limitations period. (*See* Brooks Decl. Exs. 10-15).  Plaintiffs articulate no basis for the Court to find that Pet Stylists employed *before* the national rollout were similarly situated to Pet Stylists employed *after* the rollout with respect to the claims in this case.[14]

### 3.      Sereno is Differently Situated from the Collective.

Sereno is the only Plaintiff who was a Grooming Assistant for Petco within the

---

[14] Making a preliminary finding regarding the legality of an alleged common plan or practice is not inappropriate as Plaintiffs suggest. (Pl. Br. at 11).  To the contrary, it is a simple confirmation of whether the named plaintiffs have met their first-stage burden to make a modest, yet substantive, showing that "they and potential plaintiffs together were victims of a common policy or plan *that violated the law.*"  *Foster v. Food Emporium*, 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000) (citation omitted & emphasis added); *see also Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 347-48 (W.D.N.Y. 2011) (denying conditional certification because plaintiffs "failed to make the requisite 'modest showing' that they 'were victims of a common policy or plan that violated the law.'" (citations omitted)).

limitations period. (Brooks Decl. Ex. 12, at ¶1).[15]  She is also the only Plaintiff who alleges that, as a Grooming Assistant, she was required by Petco to purchase grooming tools used for haircuts *that she was not permitted to use in her job*. (Sereno Dep. 22:6-27:8, 32:13-23).[16]  Sereno claims that she was instructed to purchase grooming tools by her Grooming Salon Manager because she expected to enter Petco's training program to become a Pet Stylist, but never did. (*Id.*).  At best, Sereno's claim that she was unnecessarily required to purchase grooming tools was an unfortunate mistake unique to her.  She is not similarly situated with respect to her claims in this action to any members of the collective.

### 4.     Grooming Assistants Are Not Similarly Situated to Pet Stylists.

With a disturbing lack of candor, Plaintiffs attempt to support this motion by disingenuously alleging that Grooming Assistants and Pet Stylists both performed the same job duties and were therefore required to purchase the same equipment. (Pl. Br. at 3-4).  As the record – including Plaintiff Sereno's deposition testimony – prove, Grooming Assistants and Pet Stylists both bathe and brush pets, but Pet Stylists perform a significant duty that Grooming Assistants do not – they cut pet hair. (Fuchs Decl. Exs. A, C).  Grooming Assistants are not trained, qualified or permitted to cut pet hair.  (Weinand Decl. ¶¶8-9).  Accordingly, they are not required or permitted to use – much less purchase – the tools required to cut pet hair, such as electric clippers, blades and shears. (Weinand Decl. ¶9; Sereno Dep. 32:13-23).  Grooming Assistants are not similarly situated to Pet Stylists with respect to the claims in this case.

### 5.     Plaintiffs Are Not Similarly Situated to Collective Members Who Were Paid Pursuant to Different Pay Plans.

Plaintiffs also allege that they are similarly situated to a national class of Grooming

---

[15] Plaintiff Bradshaw was a Grooming Assistant in late 2010 and late 2011, prior to the commencement of the FLSA limitations period. (Bradshaw Decl. ¶2).

[16] Bradshaw does not allege that she was required to purchase tools as a Grooming Assistant. She claims she was required to purchase grooming tools when she became a Pet Stylist in March 2012.  (Bradshaw Decl. ¶¶2, 11).

Assistants and Pet Stylists because, they claim, "Petco subjects Pet Stylists and Grooming Assistants to uniform compensation policies." (Pl. Br., Pt. IV). Even if the Court were to disregard the literally dozens of different base hourly wages and/or commission percentages that Grooming Assistants and Pet Stylists in different states and municipalities were paid during the limitations period (*see infra* Point III.A.6), this argument fails because Petco applies four distinctly different pay plans to different salon partners in different locations:

| Pay Plan | Pet Stylists | Grooming Assistants |
|---|---|---|
| A | (1) $7.65/hour or the local minimum wage, whichever is higher, or<br><br>(2) Commissions (50% for full service groom). | (1) The highest minimum wage (federal or local), or<br><br>(2) Commissions (40% for full service bath). |
| B | (1) $7.65/hour (up to $9.00), or the local minimum wage, whichever is higher, or<br><br>(2) Commissions (55% for passing a three breed technical grooming course, or 60% commission for those with "Senior Level Grooming Skills"). | (1) The highest minimum wage (federal or local), or higher, depending on tenure.<br><br>(2) No commission. |
| C | (1) Base rate of $10/hour, plus<br><br>(2) A production incentive for the performance of services based on a percentage of their gross weekly sales. | (1) Base rate of $9/hour, plus<br><br>(2) A production incentive for the performance of services based on a percentage of their gross weekly sales.[17] |
| Region 22 Pilot | (1) $10/hour base rate or the local minimum wage, whichever is higher, or<br><br>(2) Commissions (50% for full service groom). | (1) The local minimum wage , or<br><br>(2) Commissions (40% for full service bath). |

Plaintiffs, who worked in New York, New Jersey, Connecticut and Kansas, were all paid pursuant to Pay Plan A. (Barnett Decl. ¶4). They are not similarly situated to Grooming Assistants under Pay Plan B with respect to the claims presented in this action, because Plaintiffs earned commission. They are not similarly situated to Pet Stylists subject to Pay Plan B because their commission is calculated differently. Neither Pay Plan A or Pay Plan B Grooming

---

[17] *See* Barnett Decl. Exs. A-D. The settlement of California claims covers all FLSA claims through May 15, 2015. (Fuchs Decl. Ex. H). If Plaintiffs stipulate that California Grooming Assistants and Pet Stylists are excluded from this action going forward, Pay Plan C is irrelevant to this motion.

Assistants or Pet Stylists are similarly situated to Pay Plan C salon partners, as Pay Plan C partners have a completely different pay structure. Nor are they similarly situated to Region 22 Pilot Pay Plan Pet Stylists, who receive an hourly base wage of $10.00 per hour. Plaintiffs cannot adequately represent the claims of Pay Plan B, Pay Plan C or Region 22 Pay Plan employees because they do not stand in the same position as salon partners paid pursuant to these alternative pay plans with respect to the claims asserted in this action.

### 6. Plaintiffs Are Not Similarly Situated to Collective Members In States or Municipalities With Different Minimum Wages.

The gravamen of Plaintiffs' FLSA claim in this action is that they were required to buy tools needed to perform their job, and that the cost of those tools brought them below the *federal* minimum wage, $7.25 per hour.[18] (Pl. Br. at 1). However, whether or not the purchase of tools brings the earnings of any Grooming Assistant or Pet Stylist below minimum wage for any specific pay period will vary widely depending on the minimum wage of the state or municipality in which each individual Grooming Assistant or Pet Stylist worked. This is because all of Petco's Pay Plans specifically provide that the minimum base hourly wage of Grooming Assistants and Pet Stylists was at least equivalent to the *local* minimum wage. (Barnett Decl. Exs. A-D, at 2-3). This differential creates a wide variety of hourly base rates for Pet Stylists and Grooming Assistants which may or may not have been more than they claim to have spent on tools during any particular pay period.

Grooming Assistants and Pet Stylists in the 22 states applying the federal minimum wage,[19] depending on their pay plan (*see supra* Point III.A.5), receive either commission or an

---

[18] 29 U.S.C. § 206 (a)(1)(c).

[19] The 22 states applying the federal minimum wage as of this date are Alabama, Georgia, Idaho, Indiana, Iowa, Kansas (where Plaintiff Bradshaw was employed), Kentucky, Louisiana, Mississippi, Nevada, New Hampshire, North Carolina, North Dakota, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Wisconsin and Wyoming., as well as Puerto Rico. Ga. Code. Ann. §34-4-3; Idaho Code Ann. § 44-1502; Ind. Code §22-2-2-4(g); Iowa Code § 91D.1; Kan. Stat. Ann. § 44-1203; Ky. Rev. Stat. Ann. § 337.275; Nev. Const. art. 15, §

hourly base rate of $7.25, whichever is greater. However, the base hourly rate paid to Pet Stylists in those states is greater than the federal minimum wage – $7.65 per hour. (Barnett Decl. Ex. A). Whether or not any Grooming Assistant or Pet Stylist in those jurisdictions can establish that an allegedly required tool purchase brought their earnings below the federal minimum wage will differ based upon their position. This differential is minor, however, when compared to the variations to the base hourly rates received in states and municipalities that have minimum wages greater than the federal minimum wage, where the base hourly rate paid to Pet Stylists and Grooming Assistants matches the local minimum wage. Some of these variations, which differentiate Plaintiffs from both each other and from the members of the collective, are:

1.   New York's state minimum is $8.75 per hour. New York's minimum wage was $7.25 per hour in 2013, and $8.00 per hour in 2014. N.Y. Lab. Law § 652.

2.   The minimum wage in New Jersey, where Plaintiffs Doidge and Fillipone worked, and thus the base hourly rate of all collective members in that state, is currently $8.38. N.J. Admin Code § 12:56-3.1. In 2014, the New Jersey minimum wage was $8.25. N.J. Stat. Ann § 34:11-56a4. Prior to 2014, the federal minimum wage of $7.25 was in effect.

3.   The minimum wage in Connecticut, where Plaintiff Sereno worked, is currently $9.15 per hour – creating a $2.90 per hour "pad" for each hour worked to offset any claim by members of the collective that required tool purchases brought them below the federal minimum wage. Connecticut's minimum wage was $8.25 per hour from January 1, 2010 to December 31, 2014, $8.70 per hour in 2014, and increased to $9.15 per hour in 2015. Conn. Gen. Stat. §31-58(j).

4.   In Maine, the minimum wage is currently $7.50 per hour, which is the base hourly rate for any Grooming Assistants in Maine. Me. Rev. Stat. Ann. Tit. 26, § 664. Pet Stylists make the national hourly base rate of $7.65 per hour, which happens to be more than the Maine minimum wage. (Barnett Decl. Ex. A, at 2).

5.   The minimum wage in Washington State, the highest statewide minimum wage in the nation, is currently $9.47 an hour since January 1, 2015 and has been adjusted every January 1st based upon the cost of living, since 2001. Wash. Rev. Code § 49.46.020(b). Thus, the Washington State minimum wage was $9.32 in 2014,

---

16; N.H. Rev. Stat. Ann. § 279.21; N.C. Gen. Stat. § 95-25.3; N. D. Cent. Code § 34-06-22; Okla. Stat. tit. 40, § 197.2; 43 Pa. Stat. Ann. § 333.104; Tex. Lab. Code Ann. § 62.151; Utah Code Ann. § 34-40-104; Virginia Code Ann. § 40.1-28.10; Wis. Admin. Code DWD § 272.03; Wyo. Stat. Ann. § 27-4-202; P.R. Laws Ann. Tit. 29 § 250.

$9.19 in 2013, and $9.04 in 2012.[20]   Members of the purported collective in Washington State received these minimum hourly wages as their minimum hourly base rate, giving them an hourly "pad" against any alleged reduction in their wages because of tool purchases of  $2.22 per hour, $2.07 per hour, $1.94 per hour, and $1.29 per hour in 2015, 2014, 2013, and 2012, respectively.

6.      Many other states currently apply minimum wages in odd amounts greater than the federal minimum wage: Alaska's minimum wage is $8.75 per hour; Arizona's minimum wage is $8.05 per hour; California's is $9.00 per hour, Colorado's is $8.23 per hour, Delaware's is $8.25; Florida's is $8.05; Hawaii's is $7.75; Illinois' is $8.25; Maryland's is $8.25; Massachusetts' is $9.00; Michigan's is $8.15; Minnesota's is $9.00, Missouri's is $7.65;[21] Montana's is $8.05, Nebraska's is $8.00; New Mexico's is $7.50; Ohio's is $8.10; Oregon's is $9.25; Rhode Island's is $9.00; South Dakota's is $8.50; Vermont's is $9.15; and West Virginia's is $8.00.[22]   Collective members in each of these states face a different analysis regarding whether or not any alleged tool expenses brought them below the federal minimum wage for any week.

7.      Several municipalities where Petco has Grooming Salons pay even higher local minimum wages.   The current minimum wage in Washington D.C. is $10.50 an hour; in Chicago, it is $10.00; in Johnson County, Iowa it is $8.20; in Louisville, Kentucky, it is $7.75; in Montgomery County, Maryland it is $8.40; in Prince George's County, Maryland, it is $8.40; in Kansas City, Missouri it is $8.50; in St. Louis, Missouri it is $7.65; in Albuquerque, New Mexico it is $7.75; in Las Cruces, New Mexico it is $9.20; in Santa Fe, New Mexico it is $10.84; and in Seattle, Washington it is $11.00 per hour.[23]

Accordingly, Plaintiffs are not similarly situated to those purported members of the

---

[20] See Wash. State Dep't of Labor & Industries, History of Washington Minimum Wage, http://www.lni.wa.gov/ workplacerights/wages/minimum/history/default.asp (last visited Sept. 23, 2015).

[21] This is the base hourly rate paid to Pet Stylists, but not Grooming Assistants, in states applying the minimum wage. (See Barnett Decl. Ex. A, at 2).

[22] See Alaska Stat. § 23.10.065; Ariz. Rev. Stat. § 23-362; Cal. Lab. Code § 1182.12; Colo. Const. art. XVIII § 15; Del. Code Ann. Tit. 19, § 902; Fla. Const. art X, § 24; Haw. Rev. Stat. § 387-2; 820 Ill. Comp. Stat. 105/2, 105/4; Md. Code Ann., Lab. & Empl. § 3-413; Mass. Gen. Laws ch. 151, §1; Mich. Comp. Laws §408.414; Min. Stat. §177.24(b)(ii); Mo. Rev. Stat. §290.502; Mont. Code Ann. § 39-3-409; Neb. Rev. Stat. § 48-1203; N.M. Stat. Ann. § 50-4-22; Ohio Const. art. II, § 34a; Or. Rev. Stat. § 653.025; R.I. Gen. Laws § 28-12-3; S.D. Codified Laws § 60-11-3; Vt. Stat. Ann. Tit. 21, § 384; W. Va. Code § 21-5c-2.

[23] D.C. Code § 32-1003(a)(4); Chicago Min. Wage Ordinance 1-24-020(a); Johnson Cnty. Code §4:7.1; Louisville Metro County Ord. § 112.04(b); Montgomery County Code Ch. 27, Art. XI (Nov. 26, 2013); Prince George's County Labor Code, Subtitle 13A (2014); Kansas City Code of Ordinances Art. IV, Ch. 38 (July 16, 2015); St. Louis Ordinance No. 70078, § 2I (May 29, 2015); Albuquerque Code of Ordinances, § 13-12-3(B) (Am. Nov. 6, 2012); Las Cruces Min. Wage Ordinance Art. II § 14-62(b) (Dec. 1, 2014); Santa Fe Living Wage Ord. §28-1.5.B (adjusting minimum wage annually based on CPI) (Am. Jan. 1, 2008); City of Seattle, Wash., Seattle Municipal Code § 14.19.030.A.   To the extent Plaintiffs claim California employees are still part of this action, several municipalities in California maintain higher minimum wages, such as San Francisco at $12.25 per hour and Los Angeles at $10.50 per hour.   San Francisco Minimum Wage Ordinance, § 12R.4(a)(1)(A); Los Angeles, CA Code § 187.02 (May 22, 2015).

collective who earn a significantly higher hourly base wage. This is because the tools they allege they were required to purchase are typically purchased through on-line vendors such as "PetEdge" at a uniform, discounted price, regardless of the local minimum wage. (*See, e.g.*, Kucker Dep. 38:14-39:7; 62:17-63:2; Fuchs Decl. ¶8, Ex. G). Whether or not the cost of such purchases brings them below the *federal* minimum wage of $7.25 per hour for a particular week will depend upon the *local* minimum wage which forms the basis for their base hourly rate.

Plaintiff Bradshaw, who earned a minimum hourly base wage of $7.65 per hour (Barnett Decl. Ex. A at 2; Brooks Decl. Ex. 15; Bradshaw Decl. ¶9) is not similarly situated to a Pet Stylist in Seattle earning at least a base hourly wage of $11.00 per hour, or $440 for a 40 hour workweek, in weeks when commission earnings do not exceed $440. The $21 to $40 that Bradshaw alleges she spent on three occasions during her employment to sharpen scissors and blades; as well as the $700 total she alleges she spent on grooming tools throughout her employment (Bradshaw Decl. ¶12-13) may have brought her own wages for a specific week below $7.25 per hour, but would likely not have done so to the $11.00 an hour Seattle Pet Stylist, or a $9.15 per hour Connecticut Pet Stylist, who would earn $366 for a 40 hour week.

### C.   Plaintiffs Have Not Demonstrated that they Were Subject to a Common Plan or Policy that Violated the Law within the Applicable Limitations Period.

Plaintiffs' reliance on an informational document entitled "Frequently Asked Questions" dated July 5, 2007, stating that Pet Stylists are responsible for providing their own clippers, blades and shears, is an attempt to mislead the Court based upon obsolete policies that have not been in effect at any time during the limitations period for a collective action under the FLSA. The record proves that these "FAQs" regarding Petco Grooming Careers have not been in effect since 2010. (Weinand Decl. ¶22). A series of subsequent documents produced during discovery reflect Petco's policies during the limitations period. Petco's policy and practice since June 2011

has been to provide two standardized sets of Bathing Kits to each of its grooming salons, which provide salon partners with all the equipment needed to provide full bathing and brushing services. (Weinand Decl. ¶11, Exs. A-B). The record also shows that Petco commenced a nationwide rollout of grooming tool kits to be used by Pet Stylists and Grooming Salon Managers to cut pet hair, commencing in November 2012 in New York, continuing in the tri-state area and the northeastern states, and continuing nationwide through the first quarter of 2013. (Weinand Decl. ¶19-21, Exs. C-E).

Plaintiffs disingenuously ignore Petco's Grooming Tools policy which was in effect during the FLSA limitations period, which states that "Petco provides salons with 2 bather kits and 2 Pet Stylist kits. These are Petco tools that can be shared amongst the salon partners. Additional tools are available to order [for] in store use." The Grooming Tools policy goes on to state that 1) Petco will cover the maintenance costs for all Petco-owned equipment; and 2) Petco will maintain grooming tools on an "as needed" basis, providing guidelines for maintenance of shears and clippers. (Weinand Decl. Ex. E). Plaintiffs also ignore Petco's formal Grooming Operations policy in effect during the limitations period. (Weinand Decl. Ex. F). In Petco's Grooming Operations policy updated on November 8, 2013, Petco's policies regarding tools and equipment are detailed at length, including its policies that 1) Petco supplies all salon partners with the necessary tools to perform their job duties; 2) salon partners may use personal tools if they choose; 3) tools can be ordered through the OSS; 4) lists the standard set of bathing and grooming tools provided in each company provided bathing or grooming kit; and 5) states that the store salon must have one month's worth of grooming supplies on hand at all times. (Weinand Decl. Ex. F, at 5).

Accordingly, Plaintiffs have failed to demonstrate that they were subject to a common

Case 1:14-cv-09983-DCF   Document 41   Filed 10/07/15   Page 30 of 33

plan or policy that violated the law. Instead, they cite only an informational document not in effect during the limitations period, and ignore Petco's formal tools policies in effect during the limitations period that explicitly contradict their claims in this action and are lawful on their face. Given these undisputed facts, Plaintiffs cannot meet their burden of showing an *unlawful* common policy, or that other Petco stores commonly deviated from Petco's lawful policies in the same *unlawful* manner. *See, e.g.*, *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383, at *3-5 (S.D.N.Y. Nov. 13, 2009) (the existence of a common presumptively legal policy does not warrant certification); *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006) (denying conditional certification where plaintiffs relied solely on conclusory allegations that "offered nothing of evidentiary value;" plaintiffs are still required to introduce evidence "sufficient to demonstrate that plaintiffs and potential class members were victims of a *common scheme or plan* that violated the law"); *Ahmed v. T.J. Maxx Corp.*, 2013 WL 2649544, at *15 (E.D.N.Y. June 8, 2013) (holding that although plaintiffs had offered some evidence that some managers flouted defendant's policies, plaintiffs did not show "that such activity was widespread or common practice, or that the managers did so because they were instructed, compelled, forced, or encouraged to do so by other [of defendant's] policies") (quoting *Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011)).

**D.    Plaintiffs' Proposed Notice Should Be Revised to Reflect the Correct Time Periods, its Language Should Be Accurate, and a Distinction Must Be Made Between Pet Stylists and Grooming Assistants.**

Plaintiffs proposed notice is deficient for a number of reasons. First, Plaintiffs have chosen April 28, 2012 to present as the applicable notice period. This is incorrect. Notice of a collective action should only issue to those individuals who were employed within three years *from the date the notice is issued* (plus the period in which the parties agreed to toll the

limitations period).[24] *See In re Penthouse Exec. Club Compensation Litig.*, 2010 WL 4340255, at *5, n.4 (S.D.N.Y. Oct. 27, 2010) ("[I]t is appropriate at this stage for the plaintiffs to provide notice . . . within three years of the sending of the notice to conform as closely to 29 U.S.C. § 256 as possible."). Accordingly, the FLSA notice period start date should be 3 years (plus the tolling period) before the motion is granted, not April 28, 2012.

Second, Plaintiffs have requested that the putative collective class members be given 90 days in which to return the "Consent to Be a Party Plaintiff" form. Courts regularly apply a period of 60 days for opt-ins to return the form. *See Bah v. Shoe Mania, Inc.*, 2009 WL 1357223, at *3 (S.D.N.Y. May 13, 2009) ("Potential plaintiffs will have 60 days from the mailing of the notice to file opt-in elections."). Accordingly, putative collective class members should be given 60 days, not 90 days, to opt-in to this action.

Third, Plaintiffs' proposed notice should accurately reflect the claims in this lawsuit and the claims at issue with respect to this notice. On page 1 (first bullet), page 2 (question 2), and page 3 (question 7), the proposed notice references overtime claims, which are not a claim in this action (*see* Am. Compl. ¶¶ 210-22), so any reference to overtime must be struck from the notice. This is also not a retaliation case. Plaintiffs' statement on page 4 (question 11) putative class members should contact Plaintiffs' counsel if they believe they are being retaliated against is gratuitous and unrelated to the purpose of the notice. *See Cohan v. Columbia Sussex Mgmt.*, 2013 WL 8367807, at *13 (E.D.N.Y. Sept. 19, 2013) (deleting second paragraph in retaliation section that starts "If you believe that you have been retaliated against" because "the first paragraph adequately notifies potential plaintiffs of their rights").

In addition, the proposed notice claims on page 2 (question 5) incorrectly summarizes

---

[24] *See* Tolling Stipulation, ECF No. 23.

Petco's position. It should be revised to state: "Petco maintains that all Pet Stylists and Grooming Assistants were provided all equipment necessary to perform their duties by Petco during the relevant time period. Petco further maintains that it was not required to reimburse Pet Stylists and Grooming Assistants for additional equipment, and that it lawfully compensated them at all times." This statement should also be included on the first page, as the second bullet point.

Fourth, Plaintiffs' proposed Consent to be a Party Plaintiff form should also be revised. The third paragraph states that putative opt-ins "consent to join any separate or subsequent action." This is patently improper. The only action the putative opt-ins should be joining is the present one. Finally, there should be the following check boxes for putative opt-ins, in order to distinguish between Pet Stylists and Grooming Assistants:

> ☐ I was a Pet Stylist from [limitation period start date] to present.

> ☐ I was a Grooming Assistant from [limitation period start date] to present.

**E.     Notice To Potential Collective Class Members Should Be Handled By A Third-Party Administrator.**

If the Court determines that notice should be sent to putative collective class members, Petco requests that a neutral third-party administrator be used to issue the notice. The United States Supreme Court held in *Hoffmann-La Roche Inc.* that the district courts have a substantial interest in managing communications that are mailed to potential plaintiffs because of "the potential misuse of the class device, as by misleading communications . . . ." 493 U.S. at 170-71. Courts have recognized the value of using third-party administrators to provide notice to potential class members, and doing so in this case will protect the privacy of the potential class members and prevent improper and intrusive written communications and phone calls from Plaintiff's counsel to current and former employees. *See, e.g., J.S. v. Attica Central Schools,* 2006 WL 581187, at *7 (W.D.N.Y. Mar. 7, 2006) (ordering use of impartial third party to mail

notice to potential class members); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1129-30 (N.D. Cal. 2009) (same).  These considerations are especially true here, where there is already record evidence that Plaintiffs' counsel has improperly solicited the lead plaintiff, Kristina Kucker.  (*See* Letter Response in Opposition to Plaintiffs' Motion to Compel (ECF No. 38), at 3).  The use of a neutral third-party administrator is simply the best and most efficient way to ensure that any potential order regarding notice is followed and conducted in a neutral fashion.[25]

## IV.    CONCLUSION

Plaintiffs' motion fails in every respect to show that they are either similarly situated to a nationwide collective of Grooming Assistants and Pet Stylists, or that they were subject to policy or practice that violated the law within the FLSA limitations period.  For all the reasons stated above, Plaintiffs' motion for collective certification should be denied.

Date:   October 7, 2015
          New York, New York

*/s/ Stephen A. Fuchs*
Stephen A. Fuchs
Christine L. Hogan

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Attorneys for Defendant*
PETCO ANIMAL SUPPLIES STORES, INC.

---

[25] Plaintiffs will not be prejudiced by the use of a neutral third-party administrator.  The notice would provide Plaintiffs' counsel's contact information, allowing the putative collective class members to contact counsel if they desire.  Petco will work with Plaintiffs to find a mutually agreeable third-party administrator, and Petco agrees to pay the costs associated with using a third-party administrator.