UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTINA KUCKER, et al.,

                                  Plaintiff,

                    -against-

PETCO ANIMAL SUPPLIES STORES, INC.,

                                  Defendant.

14cv9983 (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

In this action, before me on consent pursuant to 28 U.S.C. § 636(c), plaintiffs

Kristina Kucker, Sonny Urbine, Hillary Anderson, Magda Alexandra Sereno, Amy Doidge,

Jill Filippone, and Heather Bradshaw (collectively, "Plaintiffs") allege that, while working as

"Pet Stylists" or "Grooming Assistants" for defendant Petco Animal Supplies Stores, Inc.

("Petco"), they were required to purchase their own grooming equipment, causing them to earn

less than the minimum wage, in violation of the Fair Labor Standards Act ("FLSA") and/or state

law.[1]  In their present motion, made pursuant to Section 216(b) of the FLSA, Plaintiffs seek

conditional certification of a collective of similarly situated Petco employees, and ask this Court

to facilitate Court-authorized notice, so that the similarly situated employees may opt into

Plaintiffs' collective action.  For the reasons that follow, Plaintiffs' motion (Dkt. 32) is granted,

with certain modifications to the form of notice they have proposed.

---

[1] As discussed *infra* (*see* Background, Section B), plaintiffs Kucker and Urbine, whose
FLSA claims would concededly be time-barred, have asserted claims only under New York state
law.  (*See* Amended Complaint, dated Feb. 17, 2015 ("Am. Compl.") (Dkt. 10) ¶¶ 50, 105, 210.)

## BACKGROUND

### A.    Factual Background

#### 1.    Plaintiffs' Employment at Petco

Each of the Plaintiffs worked for Petco, either as a bather, referred to as a "Grooming Assistant," or a groomer, referred to as a "Pet Stylist," in a Petco store located in California, Connecticut, New Jersey, New York, or Kansas.[2]  (Am. Compl. ¶¶ 11, 14, 21, 25, 29, 33.) Specifically, plaintiff Kucker worked for Petco as a Pet Stylist from approximately January 2005 through January 2009, in New York, New York (Am. Compl. ¶ 11); plaintiff Urbine worked for Petco as a Pet Stylist from approximately August 2009 through September 2010, in Brooklyn, New York (*id.* ¶ 14); plaintiff Anderson worked for Petco as a Pet Stylist from approximately January 2006 through February 2012, in Cerritos, California (*id.* ¶ 17); plaintiff Sereno worked for Petco as a Grooming Assistant from approximately July 2011 through July 2014, in Windsor, Connecticut (*id.* ¶ 21); plaintiff Doidge worked for Pecto as a Pet Stylist from approximately January through June 2013, in Edison, New Jersey (*id.* ¶ 25); plaintiff Filippone worked for Petco as a Pet Stylist from approximately December 2011 through May 2013, in Phillipsberg, New Jersey (*id.* ¶ 29); and plaintiff Bradshaw worked for Petco as a Grooming Assistant from approximately September through December 2010, and as a Pet Stylist from approximately June 2011 through December 2012, in Salina, Kansas (*id.* ¶ 33).

---

[2] Although, as discussed below, the responsibilities of a "Grooming Assistant" includes more than bathing pets, the term "Grooming Assistant" and "bather" are used interchangeably by Plaintiffs, as are the terms "Pet Stylist" and "groomer."  (Transcript of Deposition of Kristina Kucker, conducted Aug. 3, 2015 ("Kucker Tr.") (Dkt. 34-8) 21:11-17, 31:3-5).)

In support of their motion for conditional certification, Plaintiffs have provided this Court with declarations from six of the seven named Plaintiffs,[3] each of whom claim that, pursuant to company-wide policy, he or she had to buy the bathing and grooming tools necessary to perform his or her job duties.  (Declaration of Molly A. Brooks in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA, dated August 31, 2015 ("Brooks Decl.") (Dkt. 34), Exs. 10-17.)  Additionally, Plaintiffs have provided deposition testimony from plaintiffs Kucker and Sereno (*id.*, Exs. 8-9), as well as various printouts from Petco's website that describe job duties, hiring requirements, and other allegedly uniform company policies (*id.*, Exs. 1-4, 6, 7, 16).

### 2.   Petco Grooming Salons

Petco is a privately held national provider of pet supplies and pet services, such as grooming and dog training, with more than 1400 stores located in all 50 states, the District of Columbia and Puerto Rico.  (*See* Declaration of Wendy Weinand in Opposition to Plaintiff's Motion for Conditional Certification and Court Authorized Notice Pursuant to FLSA § 216(b), dated Sept. 30, 2015 ("Weinand Decl.") (Dkt. 42) ¶¶ 1-2; *see also* Brooks Decl., Ex. 1.)  Most Petco stores maintain Grooming Salons, which offer a variety of pet grooming services, including cutting and styling pet hair, bathing, brushing, and nail clipping.  (Weinand Decl. ¶ 8.)

---

[3] Plaintiff Anderson did not provide a declaration.  According to Petco, "the claims of Plaintiff Hillary Anderson and all California Grooming Assistants and Pet Stylists under the FLSA were recently settled in a California State Court action, *Matthews v. Petco Supplies Stores, Inc.*, No. BC539637 (Sup. Ct. L.A. Cnty. Cal. Sept. 4, 2015)."  (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification and Court Authorized Notice Pursuant to 29 U.S.C. § 216(b), dated Oct. 7, 2015 ("Def. Mem.") (Dkt. 41) at n.11; *see also* Declaration of Stephen A. Fuchs in Opposition to Plaintiff's Motion for Conditional Certification and Court Authorized Notice Pursuant to FLSA § 216(b), sworn to Oct. 7, 2015 ("Fuchs Decl.") (Dkt. 44), Ex. H).)  Plaintiffs agree with this assessment (*see* Dkt. 55), and thus seek certification of a national collective that excludes California (*see id.*).

Plaintiffs' allege that uniform services are provided across all Grooming Salons, as customers nationwide may opt for packaged services such as a "Full-service Groom," "Full-service Bath," and "Puppy's First Bath," or may choose from a menu of à la carte services.  (Brooks Decl., Ex. 2.)  Further, Plaintiffs contend that Petco's website informs customers that they can expect the same services during a visit to any Grooming Salon (*id*.), and assert that Petco offers the same discounts and satisfaction guarantee to all Grooming Salon customers nationwide.  (*Id*., Ex. 3.)

The employees who work in the Grooming Salons are, according to Petco, collectively referred to as "salon partners," but they hold four distinct employment positions, two of which – Grooming Assistants and Pet Stylists – are relevant in this action.[4]  (Declaration of Wayne Phillip Barnett in Opposition to Plaintiff's Motion for Conditional Certification and Court Authorized Notice Pursuant to FLSA § 216(b), dated October 2, 2015 ("Barnett Decl.") (Dkt. 45) ¶ 2.)  Grooming Assistants perform basic grooming services, such as brushing, bathing, cleaning ears and trimming nails, and also assist in scheduling Grooming Salon appointments and cleaning and maintaining the salon.[5]  (Weinand Decl. ¶¶ 8, 11.)  Grooming Assistants do not cut pet hair.  (*Id*. ¶ 8.)  Pet Stylists perform the same services as Grooming Assistants, and, in addition, cut pet hair.  (*Id*.)

---

[4]  The other two positions, Grooming Salon Managers and Pet Stylist Apprentices, are not part of Plaintiffs' proposed collective action.  (Am. Compl. ¶ 105.)

[5]  In July 2014, Petco apparently eliminated the Grooming Assistant position in all salons except for those in California and those, in other states, with the highest sales volume.  (Weinand Decl. ¶ 17.)  Thus, Petco claims that, as of September 30, 2015, it employed only about 133 Grooming Assistants in approximately 1492 Grooming Salons across the country.  (*Id*.)  In the states (excluding California) where Plaintiffs were employed – namely, in New York, New Jersey, Connecticut and Kansas – Petco contends that it employed only nine Grooming Assistants as of September 30, 2015.  (*Id*.)

4

Plaintiffs allege that potential Pet Stylists and Grooming Assistants nationwide apply for jobs at Petco through a central website.  (Brooks. Decl., Ex. 4.)  Plaintiffs also contend that the job functions required of Pet Stylists and Grooming Assistants appear on the website and are uniform across all Petco Grooming Salons.  (*Id.*, Ex. 6.)

### 3.   Grooming Equipment Used by Petco Salon Partners

According to Plaintiffs, Petco maintains a company-wide policy requiring Grooming Assistants and Pet Stylists to purchase the equipment that is necessary to perform their jobs.  To support this allegation, Plaintiffs rely on deposition testimony and declarations from Plaintiffs, which assert that Plaintiffs were required to purchase, *inter alia*, electric clippers and blades, nail clippers, brushes, combs, scissors, de-shedding tools, and bows and ribbons for the pets' hair. (*See* Kucker Tr. at 24:16-25:14, 31:16-32:5, 52:8-25; Transcript of Deposition of Magda Alexandra Sereno, conducted Aug. 20, 2015 ("Sereno Tr.") (Dkt. 34-9) at 10:8-11:12, 14:2-25:7, 24:16-21, 26:16-28:12, 67:3-85:20; Declaration of Kristina Kucker, sworn to Aug. 27, 2015 ("Kucker Decl.") (Dkt. 34-10) ¶¶ 10, 11; Declaration of Sonny Urbine, sworn to Aug. 25, 2015 ("Urbine Decl.") (Dkt. 34-11) ¶¶ 10, 11; Declaration of Magda Alexandra Sereno, sworn to Aug. 25, 2015 ("Sereno Decl.") (Dkt. 34-12) ¶¶ 10, 11; Declaration of Amy Doidge, sworn to Aug. 27, 2015 ("Doidge Decl.") (Dkt. 34-13) ¶¶ 10, 11, 14; Declaration of Jill Filippone, sworn to Aug. 27, 2015 ("Filippone Decl.") (Dkt. 34-14) ¶¶ 10, 11, 14; Declaration of Heather Bradshaw, sworn to Aug. 25, 2015 ("Bradshaw Decl.") (Dkt. 34-15) ¶¶ 10, 11, 14.)  Plaintiffs claim that Grooming Assistants and Pet Stylists are instructed to purchase their own equipment by Petco managers (*see* Kucker Tr. 25:13-14, 31:7-13; 31:25-32:5, 52:23-25; Sereno Tr. 10:8-11:2, 19:20-20:2, 26:23-27:10, 55:22-25, 85:13-16; Kucker Decl. ¶¶ 10, 16; Urbine Decl. ¶ 10, Sereno Decl. ¶ 10, Filippone Decl. ¶ 10, Bradshaw Decl. ¶ 10), and by Petco "corporate documents"

which "explicitly state" that Petco Stylists are "expected to provide [their] own clippers, blades, scissors, brushes, and combs," and that "[a]ll associates are responsible for the care and maintenance of their own equipment" (Pl. Mem., at 5; *see also* Brooks Decl., Ex. 16 (Petco Frequently Asked Questions ("FAQs"), dated July 5, 2007)).  Plaintiffs further allege that Pet Stylists and Grooming Assistants are required to pay for the maintenance of their equipment. (*See* Kucker Tr. 33:16-34:7, 52:23-53:14; Sereno Tr. 21:23-22:5, 96:12-97:7; Kucker Decl. ¶ 16; Urbine Decl. ¶ 13, Sereno Decl. ¶ ¶ 12, 14; Doidge Decl. ¶ 16; Filippone Decl. ¶¶ 12, 16; Bradshaw Decl. ¶¶  12, 15.)  According to Plaintiffs, due to the cost of purchasing and maintaining their equipment, their wages have, at various times during their employment, fallen below the minimum wage, in violation of the FLSA.  (Am. Compl. ¶¶ 127, 140, 152, 169, 181, 195, 207.)

Petco contends that, contrary to Plaintiffs' allegations, it supplies Grooming Assistants and Pet Stylists with equipment to be used for bathing pets and for cutting pet hair.  (Weinand Decl. ¶ 9.)  Petco differentiates between the bathing equipment used by Grooming Assistants – who do not cut pet hair and therefore do not use electric clippers, blades, and grooming shears – and the grooming equipment used by its Pet Stylists – who do cut pet hair and therefore do make use of the foregoing tools.  (*Id*.)  Petco agrees, however, that both Grooming Assistants and Pet Stylists use brushes, combs, shampoos, de-shedding tools, nail clippers and undercoat rakes while performing their job duties.  (*Id.*; *see also* Fuchs Decl., Ex. E.)

With regard to the bathing equipment, Petco claims that, "[p]rior to 2011, Petco generally provided its grooming salons with a variety of bathing supplies, such as shampoos, ribbons, and brushes."  (Def. Mem., at 4-5.)  Additionally, Petco contends that, prior to 2011, store managers could have purchased bathing and brushing supplies through Petco's Online Supply System

("OSS").  (*Id.*; *see also* Weinand Decl. ¶ 10.)  According to Petco, in early 2011, it "decided to expand and standardize the selection of bathing equipment available" to the grooming salons via OSS, and, in June 2011, it began shipping two Bathing Kits to each Grooming Salon, thereby providing a "standardized set of bathing and brushing supplies to each [G]rooming [S]alon nationwide."  (Def. Mem., at 5.)  Each Bathing Kit apparently consisted of:  "(a) a hemostat ear hair puller; (b) a medium groom slicker brush; (c) a medium Furminator deshedding tool; (d) medium and large dog nail clippers; (e) a flea comb; and (f) a dematting tool."  (*Id.*; *see also* Weinand Decl. ¶ 11, Exs. A, B.)  Petco further contends that store management could order additional equipment through OSS when necessary.  (Weinand Decl. ¶¶ 14-15.)

As for grooming tools, Petco contends that, as part of its staged "rollout" of equipment, it provided tool kits to all of its Grooming Salons during a period from 2010 to 2013.  (Def. Mem., at 5-6; Weinand Decl. ¶¶ 19-22.)  Specifically, Petco states that, in 2010, it began providing equipment to Pet Stylists statewide in California, for use while cutting pet hair.  (Weinand Decl. ¶ 19.)  Petco further states that, by the fall of 2012, it expanded the rollout and began providing Grooming Tool Kits to Pet Stylists in all of its Grooming Salons nationwide, beginning with those in New York State.  (Def. Mem., at 5.)  Each kit apparently cost $218, and included "(a) one Andis brand electric clipper; (b) a set of eight blades of different sizes for use with the electric clipper; and (c) a set of three Geib brand shears (scissors)."  (*Id.*; Weinand Decl. ¶¶ 19-22, Exs. C, D.)  According to Petco, it provided one tool kit for every two Pet Stylists per salon, and, by the first quarter of 2013, it was providing Grooming Tool Kits to Pet Stylists in all Grooming Salons.  (Weinand Decl. ¶¶ 20-21, Exs. D, E.)

## 4.   Compensation of Petco Pet Stylists and Grooming Assistants

Plaintiffs' allege that Petco pays its Pet Stylists and Grooming Assistants pursuant to uniform compensation policies.  (Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), dated August 31, 2015 ("Pl. Mem.") (Dkt. 33) at 4.)  Specifically, Plaintiffs claim that Petco pays on a piece-rate basis, meaning that each Pet Stylist and Grooming Assistant is paid a certain rate for each animal they service, rather than an hourly rate.  (*Id*.)  Petco, however, contends that its Grooming Assistants and Pet Stylists have been paid pursuant to four different pay plans during the time period relevant to this action, which allow employees to receive either piece-rate or hourly wages.  (Def. Mem., at 6.)

First, in the states where Plaintiffs worked, namely, New York, New Jersey, Connecticut, and Kansas, among other states, employees are paid according to "Pay Plan A."  (Barnett Decl. ¶ 4.)  Pursuant to Pay Plan A, Grooming Assistants earn the greater of either the federal or local minimum wage, or a commission consisting of 40% of the price of a full-service bath, whichever is greater, during a particular pay period.  (*Id*.)  Pet Stylists paid pursuant to Pay Plan A receive either an hourly base pay of $7.65 (a rate that is $.40 higher than the federal minimum wage of $7.25 per hour), or the local minimum wage, or a commission consisting of 50% of the price of a full-service groom, whichever is greater, during a particular pay period.  (*Id*.)

Second, Grooming Assistants and Pet Stylists working in all of Petco's stores in Minnesota, Iowa, and Nebraska, as well as those working in one store in Wisconsin and three stores in Illinois are apparently paid pursuant to "Pay Plan B," which was developed after Petco acquired these stores from one of its competitors.  (Barnett Decl. ¶ 7.)  Pursuant to Pay Plan B, Grooming Assistants are not eligible for commission, but instead are paid an hourly wage,

beginning at the federal minimum wage of $7.25 per hour, with the possibility of increases up to $8.00 per hour.[6]  (Barnett Decl., Ex. B.)  Pet Stylists who are paid according to Pay Plan B may either receive a commission that is equal to 55-60% of the price of a full-service groom (with the rate changing based on the experience and demonstrated expertise of the Pet Stylist), or a base hourly rate, ranging from $7.65 to $9.00 per hour, whichever is higher.  (*Id.*)[7]

Finally, Petco asserts that, on June 22, 2014, it implemented a pilot program in Region 22 (which consists of stores in Arkansas, Texas, Colorado, New Mexico, Wyoming, and Oklahoma, as well as one store in Missouri and one in South Dakota), pursuant to which Grooming Assistants earn either the federal or local minimum wage, or a commission based on 40% of full-service baths provided during a pay period, whichever is higher.  Pet Stylists earn a minimum hourly rate of $10.00, or a commission based on 50% of full-service grooms provided during a pay period, whichever is higher.  (Barnett Decl. ¶ 10, Ex. D.)

### B.    Procedural History

Plaintiffs Kucker, Anderson, Sereno, Doidge and Filippone filed this action on behalf of themselves and others similarly situated on December 18, 2014, alleging that Petco violated the

---

[6] Although Petco claims that Pay Plan B is adjusted for Grooming Assistants in stores where the local minimum wage is higher than the federal minimum wage (*see* Barnett Decl. ¶ 7, Def. Mem., at 7), the copy of Pay Plan B submitted to this court does not address the pay scale for Grooming Assistants who earn a higher minimum wage, and instead indicates that the maximum amount Grooming Assistants may earn pursuant to this pay plan is $8.00 per hour (Barnett Decl., Ex. B).

[7] Petco claims that a third payment plan, Pay Plan C, was implemented in Grooming Salons in California (a state not at issue here (*see* n.3, *supra*)) in June 2015, about six months after this action commenced.  Pursuant to Pay Plan C, Grooming Assistants are paid a base hourly rate of $9.00 per hour, and Pet Stylists are paid a base hourly rate of $10.00 per hour, with both types of employees eligible to receive a "production incentive" that is calculated based on several criteria, including the achievement of a certain sales threshold.  (Barnett Decl. ¶ 9, Ex. C.)

FLSA and/or New York, California, New Jersey and Connecticut state wage-and-hour laws, by requiring Plaintiffs and other similarly situated employees to purchase their own grooming equipment, such that they earned less than the required minimum wage.  (Dkt. 1.)  On February 17, 2015, Plaintiffs amended their Complaint to add two named plaintiffs, Urbine and Bradshaw, and to add wage-and-hour claims under Kansas state law.  (Dkt. 10.)

In the Amended Complaint, Plaintiffs Anderson, Sereno, Doidge, Filippone and Bradshaw (but not Plaintiffs Kucker and Urbine) assert an FLSA cause of action against Petco, on behalf of themselves and, putatively, all persons who worked as Pet Stylists and Grooming Assistants at Petco between December 18, 2011 (three years prior to the date the Complaint was filed) and the date of final judgment in this action.  (*Id.* ¶ 105.)  Plaintiffs allege that the group of similarly situated employees are known to Pecto, readily identifiable, and can be located through Petco's records.  (*Id.* ¶ 106.)  Plaintiffs further allege that Petco's violation of the FLSA was willful.  (*Id.* ¶¶ 220-21.)

On March 30, 2015, the parties consented to have this action proceed before a magistrate judge for all purposes, pursuant to 28 U.S.C. § 636(c).  (Dkt. 19.)  On May 8, 2015, this Court "So-Ordered" a stipulation tolling the statute of limitations for the FLSA claims for all Pet Stylists and Grooming Assistants in New York, New Jersey, Connecticut, and Kansas from April 28, 2015, for 45 days, until June 13, 2015, while the parties' entered into settlement discussions.  (Dkts. 22, 23.)  Subsequently, this Court "So Ordered" an additional stipulation, further tolling the statute of limitations from June 13, 2015 until August 17, 2015.  (Dkt. 25.)

When the parties' settlement discussions were unsuccessful, Plaintiffs filed a motion on August 31, 2015 for conditional class certification (for an FLSA collective action) and Court-authorized notice.  (Dkt. 32.)  At a telephone conference held by the Court on October 6, 2015,

the parties agreed to the further tolling of the statute of limitations for the FLSA claims of any

potential members of the collective, pending the resolution of Plaintiffs' motion.  (*See* Dkt. 40.)

Petco opposed Plaintiffs' motion on October 7, 2015 (Dkt. 41), and Plaintiffs submitted a reply

on October 30, 2015 (Dkt. 47).  Subsequently, the parties informed this Court that they planned

to attempt mediation of Plaintiffs' claims, and requested a temporary stay of this action, except

for the Court's resolution of the pending motion.  (*See* Dkt. 49.)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   The FLSA

"The FLSA was designed 'to correct and as rapidly as practicable to eliminate' the

practice of employers failing to pay its employees proper wages."  *Armenta v. Dirty Bird Grp.,*

*LLC*, No. 13cv4603 (WHP), 2014 WL 3344287, at *1 (S.D.N.Y. June 27, 2014) (quoting

29 U.S.C. § 202(b)).  Indeed, "[u]nder the FLSA, Congress prescribes a minimum wage to foster

the 'minimum standard of living necessary for health, efficiency, and general well-being of

workers,'" and employers may be found liable if they fail to pay their employees in accordance

with the federal minimum wage.  *Id*. (quoting 29 U.S.C. § 202(a)).

To that end, when employees are required to purchase and maintain equipment in order to

adequately perform their job duties, the cost of the equipment must not reduce the employees'

weekly pay below the federal minimum wage.  *See, e.g.*, *Guan Ming Lin v. Benihana Nat'l*

*Corp.*, 755 F. Supp. 2d 504, 511-12 (S.D.N.Y. 2010) (citing 29 C.F.R. § 531.35)  ("[E]mployers

can require employees to bear the costs of acquiring and maintaining tools of the trade so long as

those costs, when deducted from the employees' weekly wages, do not reduce their wage to

below the required minimum.").  Pursuant to the relevant statute:

> [I]f it is a requirement of the employer that the employee must
> provide tools of the trade which will be used in or are specifically
> required for the performance of the employer's particular work,
> there would be a violation of the [FLSA] in any workweek when
> the cost of such tools purchased by the employee cuts into the
> minimum or overtime wages required to be paid him under the
> [FLSA].

*Id.* (quoting 29 C.F.R. § 531.35).

### B.  <u>Section 216(b) of the FLSA</u>

Section 216(b) of the FLSA allows employees to "recover unpaid minimum wages and/or

overtime compensation from an employer who violates the [FLSA's] provisions, and permits

such an action to be brought as a collective action." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d

378, 384 (E.D.N.Y. 2010).  Pursuant to Section 216(b):

> An action . . . may be maintained against any employer . . . by any
> one or more employees for and on behalf of himself or themselves
> and other employees similarly situated.  No employee shall be a
> party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed in the
> court in which such action is brought.

29 U.S.C. § 216(b); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320

(S.D.N.Y. 2007) (noting that employees can maintain a collective action against an employer

where the employees are (1) "similarly situated" and (2) give their consent to become a party in

writing).

There are three "essential features" of an FLSA collective action under Section 216(b).

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007).

> First, in order to participate in a collective action, an employee
> must "opt-in," meaning the employee must consent in writing to
> join the suit and that consent must be filed with the court.  Second,
> the statute of limitations runs on each employee's claim until his
> individual Consent Form is filed with the court.  Third, to better
> serve the FLSA's "broad remedial purpose," courts may order
> notice to other potential similarly situated employees to inform
> them of the opportunity to opt-in the case.

*Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989)).  Thus, although

Section 216(b) does not explicitly address court-authorized notice, "it is 'well settled' that

district courts have the power to authorize an FLSA plaintiff to send such notice to other

potential plaintiffs."  *Grant v. Warner Music Grp. Corp.*, No. 13cv4449 (PGG), 2014 WL

1918602, at *2 (S.D.N.Y. May 13, 2014) (quoting *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249,

261 (S.D.N.Y.1997) (additional citations omitted)).  Because the statute of limitations does not

toll for opt-in plaintiffs until they consent to appear, courts will, following a finding that

plaintiffs are similarly situated with the potential collective members, "routinely approve court-

authorized notice in order to ensure that the rights of potential claimants do not expire during the

discovery process."  *Id.; see also Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.,* No.

12cv265 (PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is

appropriate[ ] to prevent erosion of claims due to the running statute of limitations . . . .").

### C.     Conditional Certification

"Courts generally determine the appropriateness of class certification at two stages:  first,

on the initial motion for conditional class certification, and second, after discovery."  *Fasanelli*

516 F. Supp. 2d at 320.  Thus, on the initial, pre-discovery motion (such as the motion presently

before this Court), a court determines whether potential opt-in plaintiffs are similarly situated

based on the pleadings and affidavits submitted to the court.  *Id.; see also In re Penthouse*

*Executive Club Comp. Litig.*, No. 10cv01145 (NRB), 2010 WL 4340255, at *3 (S.D.N.Y.

Oct. 27, 2010).  If the court is satisfied that the "similarly situated" standard has been met, it will

authorize that notice be sent to potential opt-in plaintiffs.  *Fasanelli* 516 F. Supp. 2d at 320.

After discovery is complete, the court will evaluate the full record before it to determine whether

the opt-in plaintiffs are, in fact, similarly situated.  *Id.*  If they are not, then "the class can be

decertified at that time and the claims of dissimilar opt-in plaintiffs dismissed without prejudice." *Id.*

In light of the two-step process, "[t]he burden imposed at the first 'conditional certification' stage is minimal." *Amador v. Morgan Stanley & Co.*, No. 11cv4326 (RJS), 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013). At this stage, a plaintiff is merely required to make a "modest factual showing that [he or she] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (internal quotation marks and citations omitted). The burden at this stage is "low" because "the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Id.* at 555 (internal quotation marks and citations omitted; emphasis in original). It is not until the second stage, upon a "full review of the factual record developed during discovery [that the court] determine[s] whether opt-in plaintiffs are *actually* similarly situated." *Amador*, 2013 WL 494020, at *4 (internal quotation marks and citations omitted; emphasis in original). At bottom, while conditional certification is not automatic, "[b]ecause the standard at the first stage is 'fairly lenient,' courts applying it 'typically grant[ ] conditional certification.'" *Amador*, 2013 WL 494020, at *3 (quoting *Malloy v. Richard Fleischman & Assocs. Inc.,* No. 09cv332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).

### 1.    "Similarly Situated"

"Neither the FLSA nor its implementing regulations define 'similarly situated.'" *Summa*, 715 F. Supp. 2d at 385 (citing *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y.1997)). Courts in this Circuit have held that plaintiffs can meet their burden by making a "modest factual showing sufficient to demonstrate that [the named plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* Indeed, the relevant

question "is not whether [p]laintiffs and [potential opt-in members are] identical in all respects, but rather whether they were subjected to a common policy." *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011).  Moreover, the fact that a potential class may involve employees in "a variety of diverse positions . . . does not undermine the conditional certification of the class since 'under [S]ection 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Summa*, 715 F. Supp. 2d at 390 (quoting *Colozzi v. St. Joseph's Hosp. Health Ctr.,* 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009)); *see also Lynch*, 491 F. Supp. 2d at 369 (noting that "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification" because the court may later, after having the benefit of full discovery, decertify the class or divide it into subclasses, if appropriate).

Even so, to meet their burden, plaintiffs must demonstrate that they are similarly situated "with respect to the FLSA violations they allege – not other factors." *Bijoux v. Amerigroup N.Y., LLC*, No. 14cv3891 (RJD) (VVP), 2015 WL 4505835, at *3 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015).  Thus, allegations of the mere existence of standardized policies and procedures are not sufficient to establish that plaintiffs are similarly situated, without a contention that potential plaintiffs are similarly situated with respect to a standardized policy that violates the FLSA.  *Id.* (noting that the law looks to "whether the plaintiffs are similarly situated with respect to their allegations that the law has been violated" (internal quotations and citations omitted).)

Further, "[a]t this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Summa*, 715

F. Supp. 2d at 390 (internal quotation marks and citations omitted); *see also Lynch*, 491 F. Supp.

2d at 368 ("Indeed, a court should not weigh the merits of the underlying claims in determining

whether potential opt-in plaintiffs may be similarly situated."); *Bijoux*, 2015 WL 4505835, at *3

(At this stage "the court's task is only to conclude whether there *may be* other similarly situated

workers, and [the court] need not evaluate the underlying merits of a plaintiff's claims" (internal

quotations and citations omitted; emphasis in original)).  Additionally, as the "initial class

certification determination [is] made based on preliminary documents such as pleadings and

affidavits," the determination is "necessarily [based on] unproven allegations." *Fasanelli*, 516

F. Supp. 2d at 322 (rejecting defendant's arguments that declarations provided by plaintiff

should not be relied upon because they contained "inadmissible hearsay, speculation, personal

beliefs and conclusions," and granting conditional certification).

### 2.   <u>Notice</u>

Once a court determines that plaintiffs have met their burden for initial class certification,

the court may grant court-authorized notice informing potential plaintiffs of their opportunity to

opt into the lawsuit.  *Lynch*, 491 F. Supp. 2d at 371.  The Supreme Court has held that "court-

supervised notice is the preferred method for managing the notification process for several

reasons:  it avoids 'multiplicity of duplicative suits;' it allows the court to set deadlines to

advance the disposition of an action; it furthers the 'wisdom and necessity for early judicial

intervention' in multi-party actions; and it protects plaintiffs' claims from expiring under the

statute of limitations."  *Id.* (quoting *Hoffmann-La Roche,* 493 U.S. at 170).

"[T]he form and content of the notice . . . is to be approved by the [c]ourt prior to

mailing," in order to prevent "after-the-fact disputes between counsel" regarding the form and

manner of the notice and the opt-in plaintiffs' consent form.  *Krueger v. New York Tel. Co.*, No.

93cv0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-La Roche,* 493 U.S. at 170).  The content of the notice is left to the broad discretion of the district court, *see Fasanelli,* 516 F. Supp. 2d at 323 (citing *Hoffmann-La Roche,* 493 U.S. at 170 and stating that "[t]he Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b), noting that such 'details' should be left to the broad discretion of the trial court"), and "neither the FLSA nor the courts 'have specifically outlined what form court-authorized notice should take,'" *Amador,* 2013 WL 494020, at *9 (quoting *Fasanelli,* 516 F. Supp. 2d at 323).  When exercising discretion, courts in this District consider the overarching policies of the notice provisions of Section 216(b), such as achieving judicial efficiency and lowering individual costs for plaintiffs.  *Fasanelli,* 516 F. Supp. 2d at 323.  "These benefits 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Id.* (quoting *Hoffmann-La Roche,* 493 U.S. at 170).

      **D.**    **Statute of Limitations Under the FLSA**

"The statute of limitations under the FLSA is ordinarily two years, but it may be extended to three years if the claim arises from a 'willful' violation."  *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)).  To satisfy the willfulness requirement, a plaintiff must demonstrate that the employer either acted knowingly or "'showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)).

## II.   PLAINTIFFS' MOTION

### A.   Conditional Certification of Plaintiffs' Proposed Class

#### 1.   Appropriate Standard for Evaluating Plaintiffs' Claims

As a preliminary matter, despite this Circuit's clear two-stage class certification framework, which has established that plaintiffs are subject to a lenient evidentiary standard at the initial conditional certification stage (*see* Section I(C), *supra*), Petco argues that, here, Plaintiffs should be required to meet a "more restrictive" standard because the parties have already conducted some discovery in this action.  (Def. Mem., at 10 (citing *Bacon v. Eaton Aeroquip, LLC*, No. 11cv14103 (GAD), 2012 WL 6567603, at *3 (E.D. Mich. Dec. 17, 2012)).) Petco relies on case law from the Eastern District of Michigan to support its argument, *see id.*, ignoring the "overwhelming case law in this Circuit [which] clearly holds that a 'heightened standard is not appropriate during the first stage of the conditional certification process and should only be applied once the entirety of discovery has been *completed.*'" *Amador*, 2013 WL 494020, at *4 (emphasis in original) (quoting *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 n.3 (S.D.N.Y. 2012) (collecting cases)); *see also Harper v. Gov't Emps. Ins. Co.,* 826 F. Supp. 2d 454, 457–58 (E.D.N.Y. 2011) ("Defendant's main objection is that because some discovery has been completed . . . a more stringent post-discovery analysis should have been applied . . . . [However], courts in this circuit hold generally that until the completion of discovery, [the 'modest factual showing'] analysis set forth in *Myers* applies."); *Cunningham v. Elec. Data Sys. Corp.,* 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (collecting cases and noting that, "[e]ven where the parties have undertaken substantial discovery, our courts have continued to use the first-stage certification analysis").  Here, while discovery has commenced, it has not

yet been completed, and thus Plaintiffs' burden remains "minimal" and it is proper for this Court

to apply a "lenient" evidentiary standard.  *Amador*, 2013 WL 494020, at *4.

> ### 2. Whether Plaintiffs and Members of the Proposed Collective are Similarly Situated

Plaintiffs seek to conditionally certify a national FLSA collective[8] of all persons who

worked as Pet Stylists and Grooming Assistants at Petco between December 18, 2011 and the

date of final judgment in this action.  (Am. Compl. ¶ 105.)  Petco opposes conditional

certification, arguing that, for a myriad of reasons, Plaintiffs and a national collective of

Grooming Assistants and Pet Stylists should not be considered "similarly situated."  (Def. Mem.,

at 10-22.)  Each of Petco's arguments are addressed in turn.

> ### a. Whether a Sufficient Number of Plaintiffs Were Employed During the Limitations Period To Warrant a National Collective

Petco first argues that, to the extent the named Plaintiffs, themselves, were not employed

during the statute-of-limitations period, they cannot be said to be similarly situated to the

proposed collective.  (Def. Mem., at 11.)  According to Petco, Plaintiffs will be unable to show

that Petco willfully violated the FLSA, and, as a result, their FLSA claims will be subject to a

two-year statute of limitations, rather than the three-year limitations period that applies in cases

involving willful violations.  (*Id.*)  Petco further contends that the only named plaintiffs who

have potentially viable FLSA claims (*i.e.*, claims within the two-year period) are plaintiffs

Fillipone and Sereno.  (*Id.*, at 12.)  As a result, Petco argues that Plaintiffs have "only proffered

evidence of the practices in two stores out of the over 1,400 stores nationwide," which, Petco

---

[8] This proposed "national" collective would apparently include the District of Columbia and Puerto Rico, given Petco's operations in both of those locations (*see* Background Section A(2), *supra*), but, as noted above (*see* n.3, *supra*), it would exclude California because of a prior settlement.

contends, is insufficient to warrant conditional certification of a nationwide collective.  (*Id.*, at 13.)  Petco takes the position that, if the Court were to grant conditional certification, then the collective should be limited to, at most, the stores where plaintiffs Fillipone and Sereno worked.  (*Id.*)

Plaintiffs, for their part, contend that, even if the Court were to apply a two-year statute of limitations period at this stage, the FLSA claims of plaintiffs Filippone, Doidge, Sereno and Bradshaw would all be timely.  (Reply Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), dated Oct. 30, 2015 ("Pl. Reply Mem.") (Dkt. 47) at 3.)  The Court need not resolve any factual dispute on this point, though, given that Plaintiffs have plainly alleged in their Amended Complaint that Petco not only violated the FLSA, but did so willfully.  (Am. Compl. ¶ 220.)  Based on this allegation alone, which implicates the three-year limitations period, Petco's argument to limit the scope of a collective action to two years must be rejected, at least at this stage.  "Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action."  *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015) (applying three-year statute of limitations to opt-in plaintiffs' claims); *see also Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 369 (S.D.N.Y. 2007).

Furthermore, as three years, instead of two, is the "appropriate time frame for the collective action certification period" for opt-in plaintiffs when willfulness is disputed, *Hamadou v. Hess Corp.,* 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013), it would be inappropriate for the Court to limit the evidence to be considered on Plaintiff's motion to only such evidence as may be directly relevant to a two-year period.  In fact, as Plaintiffs point out, even though plaintiffs Kucker and Urbine do not personally allege FLSA claims in this action because they

were not employed at Petco during the three years prior to the commencement of this action, the declarations submitted by even these employees are "'still relevant at this stage of the inquiry because [they] make[] similar allegations and support[] [Plaintiffs'] claim of a common policy at [Petco] [that] violate[s] the FLSA.'"  (Pl. Reply Mem., at 2 (quoting *Kim Man Fan v. Ping's on Mott Inc*., No. 13cv4939, 2014 WL 1512034, at *3 (S.D.N.Y. Apr. 14, 2014).)  Thus, Petco cannot prevail on its argument that, in considering whether Plaintiffs are similarly situated to the proposed national collective, the Court should only consider evidence submitted by two of the Plaintiffs, and wholly disregard the remainder of the Plaintiffs' statements.

### b.    Whether Plaintiffs and the Proposed Collective <u>Were Subjected to an Unlawful Common Plan or Policy</u>

Petco next argues that, as it provided grooming tool kits to Grooming Salons nationwide commencing in November 2012, Plaintiffs cannot demonstrate that they and the members of the proposed collective were subjected to an "*unlawful* common policy, or that Petco stores commonly deviated from Petco's lawful policies in the same *unlawful* manner."  (Def. Mem., at 22 (emphasis in original); *see also Myers*, 624 F.3d at 554-55 (holding that, in order to demonstrate that they are similarly situated, plaintiffs are required to make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law").)

More specifically, according to Petco, its policy during the FLSA limitations period was to provide Grooming Salons with two bather kits and two groomer kits, and, further, to cover the maintenance costs for all Petco-owned equipment.  (Def. Mem., at 22; Weinand Decl., Exs. E, F.)  Thus, Petco argues that, even if Plaintiffs could demonstrate that Pet Stylists and Grooming Assistants were subject to the *same* common policies, they are unable to make even a modest factual showing that the employees were subject to an *unlawful* policy.  (Def. Mem.,

at 22.)  Moreover, Petco claims that the evidence provided by Plaintiffs is insufficient to meet

even the minimal burden necessary for conditional certification as, according to Petco, Plaintiffs

rely on an outdated FAQs document, which has not been in effect since 2010, to argue that

Plaintiffs and the potential collective members were subjected to an unlawful policy.  (*Id.*, at 21

(referring to Brooks Decl., Ex. 16 (FAQs).)  Petco additionally argues that Pet Stylists and

Grooming Assistants who were employed exclusively before the national tool-kit rollouts are

necessarily not similarly situated to those who were employed after the rollout.  (*Id.*, at 13-14.)

Plaintiffs, in contrast, argue that the declarations and deposition testimony that they have

submitted to this Court, along with the FAQs document and other printouts from Petco's website

(Brooks Decl., Exs. 1-16), are sufficient to make the requisite "modest factual showing" that Pet

Stylists and Grooming Assistants were subjected to the same unlawful policy (Pl. Reply Mem,

at 3-4).  Plaintiffs further argue that Petco's assertions regarding its policy of sending tool-kits to

each Grooming Salon is a merits argument that is premature for this Court to consider at the

conditional-certification stage.  According to Plaintiffs, there is no evidence that "the tools Petco

claims it sent to stores were available to the employees or that they were sufficient to release Pet

Stylists and Grooming Assistants from the obligation to purchase their own equipment in order

to perform their jobs."  (Pl. Reply Mem., at n.6.)  Plaintiffs allege that, even after the national

tool-kit rollout, Pet Stylists and Grooming Assistants continued to use their own equipment due

to deficiencies in the receipt and maintenance of equipment.  (*Id.*)

This Court agrees with Plaintiffs that, whether the tool-kit rollouts sufficiently released

Pet Stylists and Grooming Assistants from their obligation to purchase their own equipment is a

factual dispute that is not for the Court to decide at this procedural stage.  *Summa*, 715 F. Supp.

2d at 390; *see also Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 272 (S.D.N.Y. 2012)

22

("The accuracy of the parties' competing views will be tested through discovery and may be raised before the Court on a motion to decertify the class after the close of discovery."). Rather, at this stage, the relevant question is whether there "may be" other similarly situated employees. *Bijoux*, 2015 WL 4505835, at *3. In this case, Plaintiffs have sufficiently alleged that they are similarly situated to the members of the potential collective. The allegations contained within the Amended Complaint, as well as the declarations and deposition testimony provided, *see, e.g., Fasanelli*, 516 F. Supp. 2d at 322 (noting that initial certification is based on "preliminary documents such as pleadings and affidavits"), allege that Pet Stylists and Grooming Assistants in multiple states were required to purchase their own tools, thereby reducing their salaries below the minimum wage in violation of the FLSA. Further, while the so-called "corporate documents" provided by Plaintiffs may be outdated, or may suggest that Petco has applied lawful uniform policies that are unrelated to the alleged violation of the FLSA (*e.g.*, policies making Pet Stylists and Grooming Assistants subject to the same job duties and hiring policies), Petco's statements regarding the national rollouts of tool kits do serve to underscore Plaintiffs' argument that Petco employees have been subject to uniform plans and policies that are specifically related to whether employees are required to purchase their own equipment. In other words, Petco's assertions that they implemented a national rollout of tool kits, and provided uniform tools to Grooming Salons nationwide, bolsters Plaintiffs' claim that Pet Stylists and Grooming Assistants are similarly situated with respect to a uniform policy regarding whether employees must purchase their own equipment, and Plaintiffs have sufficiently alleged that Plaintiffs' policy, or implementation thereof, has been in violation of the FLSA. (Pl. Reply Mem., at 3.)

**c.** **Alleged Factual Variations Between Plaintiffs'**
**Situations and Those of the Proposed Collective**

Petco's remaining arguments each turn on alleged factual variations between Plaintiffs

and the proposed collective, and, as such, are premature for the Court to consider at this initial

stage of conditional certification. *Lynch*, 491 F. Supp. 2d at 367 ("For the moment, the factual

variations defendants rely on do not undercut plaintiffs' allegations of common wage and

overtime practices that violate the FLSA.").

First, Petco argues that plaintiff Sereno is differently situated from the potential collective

because she uniquely alleges that she was required to purchase grooming tools used for cutting

pet hair, while she worked as a Grooming Assistant who was not permitted to cut hair.  (Def.

Mem., at 15.)  This alleged factual variation does not disqualify plaintiff Sereno from a potential

collective, as she has sufficiently alleged that she was required to purchase tools in order to

perform her job duties, and as a result, her salary was reduced below the minimum wage.  (*See*

*generally*, Sereno Decl.; Sereno Tr.)  The specific factual inquiry as to whether Sereno was

required to purchase tools for cutting pet hair, and whether other Grooming Assistants were

required to do the same, is premature for this Court to consider.  *See Summa*, 715 F. Supp. 2d at

390 ("At this procedural stage, the court does not resolve factual disputes, decide substantive

issues going to the ultimate merits, or make credibility determinations.").

Petco next argues that Grooming Assistants are not similarly situated to Pet Stylists

because they perform different job duties, and that each type of employee uses and purchases

different equipment.  (Def. Mem., at 15.)  This argument is similarly unavailing, as "[c]ourts

routinely authorize notice in FLSA actions even where potential opt-in plaintiffs work at

different locations, perform somewhat different duties, and are managed by different

supervisors."  *Grant v. Warner Music Grp. Corp.*, No. 13cv4449 (PGG), 2014 WL 1918602, at

*7 (S.D.N.Y. May 13, 2014); *see also Colozzi,* 595 F. Supp. 2d at 207 ("[U]nder section 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.").  Here, Plaintiffs have sufficiently alleged that Grooming Assistants and Pet Stylists alike were subject to a uniform policy requiring them to purchase their own equipment, which caused their wages to drop below the minimum wage.  That the specific tools purchased by each employee may have been different does not, at this stage, preclude a finding that Pet Stylists and Grooming Assistants are similarly situated.

By the same logic, Petco's arguments that Plaintiffs are not similarly situated to potential collective members who were paid pursuant to different pay plans, and that Plaintiffs' are not similarly situated to collective members in states or municipalities with different minimum wages, are not persuasive.  (Def. Mem. 15-20.)  Courts in this District regularly certify national FLSA collective actions involving employees who are, necessarily, subject to different minimum wages.  *See Flood v. Carlson Restaurants Inc.,* No. 14cv2740 (AT), 2015 WL 260436, at *4 (S.D.N.Y. Jan. 20, 2015) (collecting cases where courts in this District have certified national collectives).  Moreover, the fact that Plaintiffs may have been subject to different pay plans is not a sufficient reason to deny certification.  *See Sanchez v. La Cocina Mexicana, Inc.*, No. 09cv9072 (SAS), 2010 WL 2653303, at *1 (S.D.N.Y. July 1, 2010) (noting that "even though [due to plaintiffs' different pay plans] there may be some differences in the calculation of damages (should plaintiffs prevail), those differences are not sufficient to preclude joining the claims in one action" (internal quotation marks and citations omitted)).  Thus, while the factors raised by Petco could ultimately impact liability or damages findings, they cannot impact the

Court's current determination of whether Plaintiffs and the proposed collective are similarly situated, for purposes of conditional certification.

In sum, "[w]hether plaintiffs' evidence will suffice to survive a motion for summary judgment or to carry their burden at trial will become apparent in due time and in light of full discovery." *Summa*, 715 F. Supp. 2d at 391 *(quoting Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 368 (S.D.N.Y. 2007)).  At this preliminary stage, however, Plaintiffs have "made the modest showing that is required of them . . . :  they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." *Id.*

### B.   Scope and Form of Court-Authorized Notice

Having found that Plaintiffs sufficiently alleged that they are similarly situated to the members of the proposed class, the remaining question before the Court is whether the scope and form of Plaintiffs' proposed notice (Brooks Decl., Ex. 18 ("Proposed Notice")) is appropriate, *Amador*, 2013 WL 494020, at *9.  Petco argues that Plaintiffs' Proposed Notice contains multiple deficiencies, each of which are addressed below.

### 1.   Appropriate Notice Period

First, even assuming the proper notice period is three years, *see Hamadou*, 915 F. Supp. 2d at 668 (applying three-year statute of limitations for notice period where willfulness is disputed)), the parties do not agree as to how the three-year period should be calculated (*see* Pl. Mem., at 13, Def. Mem., at 23), and, according to Petco, Plaintiffs' Proposed Notice period is incorrect (Def. Mem., at 23).  Plaintiffs contend that Court-authorized notice should be sent to all Petco Pet Stylists and Grooming Assistants who worked in New York, New Jersey, Connecticut, and Kansas at any time between April 28, 2012 and the date this motion is granted.  (Pl. Mem., at 13 (noting that April 28, 2012 is the date three years prior to when that the parties entered into a

tolling agreement stipulating that the claims of all putative class members within the aforementioned states would be tolled while settlement discussions were ongoing).  Plaintiffs further contend that, for Pet Stylists and Grooming Assistants who worked in all other states, notice should be sent to those who worked at Petco any time between August 31, 2012 and the date on which the Court grants this motion.  (*Id.* (noting that August 31, 2012 is the date three years prior to when Plaintiffs' filed this motion for conditional certification).  In contrast, Petco argues that notice should be issued only to Pet Stylists and Grooming Assistants who were employed within three years from the date that notice is actually issued, "plus the period in which the parties agreed to toll the limitations period."  (Def. Mem., at 23.)

Petco is correct that, in this district, notice is "normally . . . provided to those employed within three years of the date of the notice." *Hamadou*, 915 F. Supp. 2d at 668 (citing 29 U.S.C. § 255(a) and *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012)).  "'However, because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs actions will be entertained at a later date.'"  *Id.* (quoting *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d at 410 (other citations omitted); *see also Bittencourt*, 310 F.R.D. at 116 (calculating three-year notice period from date complaint was filed).  Here, Plaintiffs have not requested that the notice period extend back to the filing of the complaint, but instead request a more limited notice period that, apart from stipulated tolling, is keyed off the date of the filing of this motion.  The Court finds this request reasonable at this stage, and will therefore grant the notice period as calculated by Plaintiffs, "with the understanding that challenges to the timeliness of individual plaintiffs actions will be entertained at a later date."  *Id.*

This Court notes, however, that, on its face, Plaintiffs' Proposed Notice is directed to Pet Stylists and Grooming Assistants employed by Petco "between April 28, 2012 and the present." (Brooks Decl., Ex. 19.)  The Notice should be modified to clarify that that period applies only to Pet Stylists and Grooming Assistants employed in New York, New Jersey, Connecticut, and Kansas, while, as discussed above, a period from August 31, 2012 to the present applies to Pet Stylists and Grooming Assistants employed elsewhere.

### 2.   **Appropriate Opt-In Period**

Petco next argues that Plaintiffs have offered insufficient justification for their request that putative collective class members be given 90 days to return the "Consent to be a Party Plaintiff" form, rather than 60 days, which, according to Petco, is the time period that is most frequently applied by courts in this District.  (Def. Mem., at 23 (citing *Bah v. Shoe Mania, Inc.*, No. 08cv9380 (LTS) (AJP), 2009 WL 1357223, at *3 (S.D.N.Y. May 13, 2009) (applying 60-day time period, from the date of mailing of the notice, for potential plaintiffs to opt-in).)  This Court agrees with Petco that a 60-day opt-in period is more consistent with the practice in this District, absent an agreement between the parties or a showing of special circumstances that may require an extended 90 day opt-in period.  *See, e.g. Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (collecting cases and applying a 60-day period where "[p]laintiffs do not argue that the circumstances of this case require an extended period, and the Court is aware of no reason that 60 days would be insufficient").

Plaintiffs argue that a 90-day opt-in period should be granted due to "equitable conditions," which exist, in their view, because "the putative class consists of thousands of lower-income workers spread throughout the country."  (Pl. Reply Mem., at 9.)  The case on which Plaintiffs primarily rely, however, *Fang v. Zhuang*, No. 10cv1290 (RRM) (JMA), 2010

WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (cited in Pl. Reply Mem., at 9), involved class characteristics that are not present in this action.  Specifically, the court found, in *Fang*, that a 90-day opt-in period was appropriate where "the pool of prospective plaintiffs consist[ed] of transient laborers" or those who "were prone to frequent, long-term international travel."  *Id.* Plaintiffs have raised no similar difficulties here, and this Court notes that virtually any minimum-wage case would presumably involve "lower-income workers," and many certified collective actions involve plaintiffs living in multiple locations.  Plaintiffs have not provided this Court with any authority for the proposition that the described characteristics of the proposed collective in this case give rise to any "special circumstance" that would warrant an extended opt-in period.

The Court acknowledges that, even without a showing of special circumstances, some courts in this Circuit have granted requests for a 90-day opt-in period.  *See, e.g.*, *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 490 (S.D.N.Y. 2009); *Sherrill v. Sutherland Glob. Servs., Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007); *Fasanelli*, 516 F. Supp. 2d at 324.  The majority, though, have limited opt-in periods to 60 days, *see* cases cited *supra*; *see also, e.g.*, *Fa Ting Wang v. Empire State Auto Corp.*, No. 14cv 1491 (WFK) (VMS), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (adopting report and recommendation and collecting cases where a 60-day opt-in period applies); *Yap v. Mooncake Foods, Inc.,* No. 13cv6534 (ER), 2015 WL 7308660, at *9 (S.D.N.Y. Nov. 18, 2015) (applying 60-day opt-in period), and this Court finds that, in this instance, there is no substantial reason to deviate from this more standard practice.

### 3. <u>Petco's Proposed Changes to the Notice and Consent Forms</u>

Petco also argues that Plaintiffs' Proposed Notice does not "accurately reflect the claims in this lawsuit and the claims at issue with respect to this notice," and should be amended to do so. (Def. Mem., at 23.)  Specifically, Petco argues that, as Plaintiffs do not plead claims in this action for failure to pay overtime, any references in the Proposed Notice to overtime claims (*see* Proposed Notice, at 1 (first bullet point), 2 (question two), and 3 (question seven)) should be stricken (Def. Mem., at 23); that a statement directing putative class members to contact Plaintiffs' counsel if they believe they are being retaliated against (*see* Proposed Notice, at 4 (question eleven)) is "gratuitous and unrelated to the purpose of the notice" and, as such, should be deleted (Def. Mem., at 23); and that the summary of Petco's position contained in the Proposed Notice (*see* Proposed Notice, at 1 (second bullet point), and 2 (question five)) is inaccurate and should therefore be revised (Def. Mem., at 23-24).  On this last point, Petco requests that its position be summarized as follows:

> Petco maintains that all Pet Stylists and Grooming Assistants were provided all equipment necessary to perform their duties by Petco during the relevant time period.  Petco further maintains that it was not required to reimburse Pet Stylists and Grooming Assistants for additional equipment, and that it lawfully compensated them at all times.

(Def. Mem., at 24.)  Plaintiffs do not oppose these requested revisions to the Proposed Notice, and, as Petco's requests are reasonable and appropriate, Plaintiffs are directed to make Petco's proposed revisions, as discussed in this paragraph.

Petco additionally argues that Plaintiffs' proposed "Consent to be a Party Plaintiff" form (the "Consent") should be revised, to the extent that it states, in its third paragraph, that opt-in Plaintiffs may "consent to join any separate or subsequent action."  (*Id*., at 24.)  Petco contends that this language is "patently improper," as "[t]he only action the putative opt-ins should be

joining is the present one." (*Id.*) Petco further argues that the Consent should include two check boxes, for opt-in plaintiffs to indicate whether they were employed as Pet Stylists or Grooming Assistants during the relevant time frame. (*Id.*) As Plaintiffs do not object to these changes, and as this Court agrees that both changes would add clarity to the Consent, Plaintiffs are directed to omit the language regarding a separate or subsequent action in the third paragraph of the Consent, and to add the check-boxes for the opt-in plaintiffs to indicate their job titles at Petco during the time period relevant to their claims.

### C.   Dissemination of the Court-Authorized Notice

Finally, Plaintiffs ask the Court to direct Petco to provide Plaintiffs with "a computer readable list of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Collective Members, and the Social Security numbers of those Collective Members whose notices are returned [as] undeliverable," so that Plaintiffs may send the Proposed Notice to potential opt-in plaintiffs. (Pl. Mem., at 14.) Plaintiffs request leave to distribute the Proposed Notice "by mail and e-mail, with reminder notices sent before the end of the opt-in period, supplemented by production of telephone numbers, so that Plaintiffs can effectively inform potential [opt-in plaintiffs] of their rights." (*Id.* at 15.) Plaintiffs further request authorization to create a "standalone website through which opt-ins can electronically submit their claim forms." (*Id.* at 16.)

While Petco does not object to the production of the specific information requested by Plaintiffs, to Plaintiffs' creation of a standalone website, or to the distribution of the Proposed Notice via mail and e-mail, to be followed by reminder notices, Petco argues that the entire process of providing notice to the potential collective class members should be handled by a third-party administrator. (Def. Mem., at 24-25.) Petco contends that such a procedure would

not prejudice Plaintiffs, as Petco is prepared to pay the costs associated with using a third-party administrator, and the Proposed Notice would provide Plaintiffs' counsel's contact information, thereby allowing potential opt-in plaintiffs to contact counsel.  (*Id.*, at n.25.)

Generally, within this Circuit, courts do not require a third-party administrator to distribute notice.  *See Hernandez v. Merrill Lynch & Co.*, No. 11cv8472 (KBF), 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012) (denying defendant's request that a third-party administrator send the notice and noting that "[t]he bulk of the district courts in this Circuit do not impose such a requirement"); *see also Lopez v. JVA Indus., Inc.*, No. 14cv9988 (KPF), 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (denying plaintiffs request to appoint a third-party administrator to mail notices where plaintiffs did not explain why an administrator was necessary); *Hart v. Crab Addison, Inc.*, No. 13cv6458 (CJS), 2015 WL 365785, at *4 (W.D.N.Y. Jan. 27, 2015) (denying defendant's request that notice be mailed through a third-party administrator).  Indeed, the cases cited by Petco in support of its request for use of a third-party administrator are either readily distinguishable from this case, *see J.S. v. Attica Central Schools*, No. 00cv513S (WMS), 2006 WL 581187, at *7 (W.D.N.Y. Mar. 7, 2006) (ordering use of an impartial third-party to mail notice in order to protect the confidentiality of student records, where the class was comprised of disabled children), or are not from within this Circuit, *see Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1129-30 (N.D. Cal. 2009) (finding, without explanation, that it would be "more appropriate" for a third-party administrator, rather than plaintiff, to distribute notice).

Even so, Petco argues that the use of an administrator should be ordered here, to "protect the privacy of the potential class members and prevent improper and intrusive written communications and phone calls from Plaintiffs' counsel to current and former employees."  (*Id.*

at 24.)  Petco asserts that such a precaution would be especially advisable in this case because, according to Petco, "there is already record evidence that Plaintiffs' counsel has improperly solicited the lead plaintiff, Kristina Kucker."  (*Id.* at 25 (referring to deposition testimony by plaintiff Kucker, who testified that she commenced this lawsuit after receiving an email from Plaintiffs' counsel).)  Despite Petco's accusations of impropriety, however, the evidence before this Court is not sufficient to warrant a finding that Plaintiffs' counsel has engaged in any professional misconduct.  Under New York's Rules of Professional Conduct, "[a] lawyer shall not engage in solicitation . . . by real-time or interactive computer-accessed communication unless the recipient is a close friend, relative, former client or existing client . . . ."  N.Y. St. R.P.C. Rule 7.3.  While the record in this case includes deposition testimony by plaintiff Kucker that she commenced this lawsuit after receiving an email from Plaintiffs' counsel, and, further, that she had not considered commencing a legal action against Petco before receiving that email (Kucker Tr. 13:5-22), there is no evidence that Plaintiffs' counsel engaged in "real-time or interactive" communication with plaintiff Kucker.  As Plaintiffs point out, the mere fact that plaintiff Kucker received an email from Plaintiffs' counsel and subsequently decided to commence the lawsuit is not sufficient to establish that improper solicitation occurred.  (Pl. Reply Mem., at 9-10.)

　　　　The Court also notes that this is not the first time that Petco has sought to raise Plaintiffs' counsel's supposed misconduct, as Petco made precisely the same accusation in opposing an earlier request by Plaintiffs for discovery of the identities of potential collective members in the states where the named Plaintiffs were employed.  (*See* Letter to the Court from Christine L. Hogan, Esq., dated Sept. 28, 2015 (Dkt. 38), at 1 (arguing that "evidence . . . exists that Plaintiffs' counsel improperly solicited clients," and that counsel "should not be permitted to use

judicially-facilitated discovery to search for additional clients").)  At that time, as now,

Plaintiffs' counsel contended that the accusation was baseless (*see* Letter to the Court from

Molly A. Brooks, Esq., dated Sept. 29, 2015 (Dkt. 39), at 1 (noting that plaintiff Kucker's

testimony did not establish that the email she received was a solicitation, and that she testified to

her own, independent reasons for commencing the suit)), and, overall, the Court determined that

Petco had not shown sufficient reason to deny the discovery sought (*see* Order, dated Oct. 6,

2015 (Dkt. 40) (ordering Petco to produce, *inter alia*, the identities of potential class members in

New York, New Jersey, Connecticut, and Kansas)).  So too, at this juncture, this Court is not

persuaded that Petco has demonstrated adequate grounds to preclude Plaintiffs' counsel from

performing the ordinary functions of class counsel in this collective suit.

Accordingly, Petco is directed to produce the information requested by Plaintiffs.  As the

parties have not proposed a timeframe for this production, the information shall be produced

within 30 days of the date of this Order, absent a stipulation by the parties or further Order of this

Court.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for conditional certification of the

collective and Court-authorized notice (Dkt. 32) is granted, subject to the modifications to

Plaintiffs' Proposed Notice set forth herein.

Dated: New York, New York
        January 19, 2016

SO ORDERED

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies To:
All Counsel (via ECF)

34