# Exhibit A

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Molly A. Brooks
Sally J. Abrahamson
685 Third Avenue, 25th Floor
New York, NY 10016
Telephone: (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz, admitted *pro hac vice*
Susan H. Stern, admitted *pro hac vice*
1515 S. Federal Hwy, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Arsenio Rodriguez
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTINA KUCKER, SONNY URBINE, HILLARY ANDERSON, MAGDA ALEXANDRA SERENO, AMY DOIDGE, JILL FILIPPONE, and HEATHER BRADSHAW, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> PETCO ANIMAL SUPPLIES STORES, INC., <br><br> Defendant. | No. 14 Civ. 9983 (DCF) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiffs Kristina Kucker, Sonny Urbine, Magda Alexandra Sereno, Amy Doidge, Jill Filippone, and Heather Bradshaw (the "Named Plaintiffs"), the Opt-in Plaintiffs (together with Named Plaintiffs, "Plaintiffs" or "Collective Members") and Defendant Petco Animal Supplies Stores, Inc. ("Petco"). Plaintiffs and Petco are collectively referred to as the "Parties."

## 1.    RECITALS AND BACKGROUND

WHEREAS, on December 18, 2014, the Named Plaintiffs Kristina Kucker, Hillary Anderson, Magda Alexandra Sereno, Amy Doidge, and Jill Filippone filed a Complaint on

behalf of themselves and others alleged to be similarly situated, asserting claims against Petco under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), California Labor Code, California Unfair Competition Law, California Private Attorneys General Act ("PAGA"), Connecticut Gen. Stat. §§ 31-51 *et seq.*, and § 31-71e, New Jersey Wage Law ("NJWL");

WHEREAS, on February 17, 2015, Plaintiffs amended their Complaint to add two additional Named Plaintiffs, Sonny Urbine and Heather Bradshaw, and to add wage and hour claims under the Kansas Wage Payment Act, K.S.A. § 44-313;

WHEREAS, the parties stipulated before the Court that all claims under California Law were mooted by the approved class action settlement of a Class Action pending in California Superior Court, *Matthews v. Petco Animal Supplies Stores, Inc.,* Case No. BC539637 (Cal. Sup. Ct., Los Angeles County), which settled all claims under California law asserted in this action;

WHEREAS, on January 19, 2016, the Court conditionally certified the FLSA collective pursuant to 29 U.S.C. § 216(b);

WHEREAS, on March 3, 2016, the parties attended a full-day mediation session with an experienced class and collective action mediator but did not reach a settlement;

WHEREAS, Plaintiffs sent out notice to the FLSA collective on April 25, 2016;

WHEREAS, 2,060 members of the FLSA collective opted in to the lawsuit;

WHEREAS, the parties continued to engage in arms-length negotiations;

WHEREAS, the purpose of this Agreement is to settle claims of all individuals who opted into the proposed FLSA collective;

WHEREAS, through extensive post-mediation settlement negotiations after the close of the Notice period, the Parties reached a settlement resulting in this Agreement;

WHEREAS, the purpose of this Agreement is to settle fully and finally all the Named Plaintiffs' and Opt-in Plaintiffs' claims against Petco, as defined in Section 2 below;

WHEREAS, the Parties have agreed to settle the Litigation as defined below on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Petco denies all liability in this action and denies all substantive allegations in the Plaintiffs' complaint;

WHEREAS, Plaintiffs' counsel has analyzed and evaluated the merits of the Plaintiffs' claims in the Litigation, and, based upon Plaintiffs' Counsel's analysis, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or that it might result in a recovery that is less favorable than this settlement, and that such recovery would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiffs;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 2.   DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2.1   **Agreement.** "Agreement" means this Settlement Agreement and Release.

2.2   **Approval Order.** "Approval Order" means the Order of Dismissal With Prejudice attached hereto as Exhibit A approving the terms and conditions of this Agreement, as entered by the Court and subject to modification by the Court.

2.3   **Bar Date.** "Bar Date" shall mean the last date by which a Collective Member must endorse and deposit or cash a Settlement Check.

2.4   **Collective Members.** "Collective Members" means Named Plaintiffs Kristina Kucker, Sonny Urbine, Magda Alexandra Sereno, Amy Doidge, Jill Filippone, Heather Bradshaw, and all individuals who opted in to the Litigation.

2.5   **Court.** "Court" means the United States District Court for the Southern District of New York.

2.6   **Defendant.** "Defendant" means Petco Animal Supplies Stores, Inc. ("Petco").

2.7   **Defendant's Counsel.** "Defendant's Counsel" means Stephen Fuchs, Esq., Littler Mendelson, P.C., 900 Third Avenue, New York, New York 10022.

2.8   **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this settlement, including FICA, FUTA, and SUTA obligations.

2.9   **Gross Settlement Fund or GSF.** "Gross Settlement Fund" or GSF" means Eight Hundred Forty Five Thousand Dollars and Zero Cents ($845,000). The GSF is the maximum amount Defendant shall pay to settle the Litigation as set forth in this Agreement, and includes settlement awards, attorneys' fees, costs, service awards, payroll taxes, and cost of administration.

2.10   **Litigation.** "Litigation" means the matter titled *Kucker, et. al. v. Petco Animal Supplies Stores, Inc.*, No. 14 Civ. 9983 (DCF) (S.D.N.Y. Dec. 18, 2014).

2.11   **Named Plaintiffs.** "Named Plaintiffs" means Kristina Kucker, Sonny Urbine, Magda Alexandra Sereno, Amy Doidge, Jill Filippone, and Heather Bradshaw.

2.12   **Net Settlement Fund.** "Net Settlement Fund" means the Gross Settlement Fund less: (1) the Settlement Claims Administrator's fees and costs, not to exceed $30,000; (2) the one-third of the GSF (*i.e.*, $281,666.67) allocated to Plaintiffs' Counsel for reimbursement of their attorneys' fees, and their litigation costs and additional expenses not to exceed

$85,000; (3) the Court-approved Service Awards to the Named Plaintiffs and Service Award Recipients in return for a general release; and (4) the employer's share of payroll taxes.

**2.13**   **Notice and Settlement Check Packet.** "Notice and Settlement Check Packet" refers collectively to the Notice of Settlement and Settlement Check to be mailed to Collective Members by the claims administrator. The purpose of the Notice Packet is to inform Collective Members of the settlement, the approximate amount of their individual settlement awards, the material provisions of this Agreement, the scope of the release they provide Defendant upon depositing or cashing the Settlement Check, and their rights with respect to this Agreement. A copy of the Notice is attached hereto as Exhibit B.

**2.14**   **Petco.**   "Petco" means "Petco Animal Supplies Stores, Inc."

**2.15**   **Plaintiffs.**   "Plaintiffs" means Named Plaintiffs and the Collective Members.

**2.16**   **Plaintiffs' Counsel.** "Plaintiffs' Counsel" means Gregg I. Shavitz, Esq., Shavitz Law Group, P.A., 1515 S Federal Hwy # 404, Boca Raton, FL 33432 (800) 616-4000; Molly A. Brooks, Outten & Golden LLP, 685 Third Avenue, New York, NY 10017, (212) 245-1000; and Brian S. Schaffer, Esq., Fitapelli & Schaffer, LLP, 28 Liberty Street, 30th Floor, New York, NY 10005, (212) 300-0375.

**2.17**   **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator into which the GSF shall be deposited.

**2.18**   **Relevant Statutory Period.** The "Relevant Statutory Period" means the period of time beginning  any time between December 18, 2008 through the date the parties execute the agreement for Collective Members who worked in New York State and from December 18, 2011 to the date the parties execute the agreement for all Collective Members who were not employed in New York State.

**2.19**   **Settlement Claims Administrator.** The "Settlement Claims Administrator" shall be Rust Consulting.

**2.20**   **Settlement Check(s).**   "Settlement Checks" means the set of checks issued to Collective Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.   "Settlement Check" means any one of the Settlement Checks issued to a Collective Member.

**2.21**   **Settlement Check Cashing Period.**   "Settlement Check Cashing Period" shall mean the period of one hundred eighty (180) days after the day on which the Settlement Claims Administrator mails a Settlement Check to a Collective Member.

### 3.   SETTLEMENT TERMS

**3.1**   **Binding Agreement.**  This Agreement is a binding agreement and contains all material terms.

4

**3.2**   **Retention and Responsibilities of the Settlement Claims Administrator.**
Plaintiffs shall retain the Settlement Claims Administrator.

(A)   The Settlement Claims Administrator shall be responsible for, among other things, preparing, printing and mailing the Notice and Settlement Check Packets as directed by the Court; updating addresses with the U.S. Postal Service's National Change of Address ("NCOA") database; making commercially reasonable searches for new addresses for Collective Members whose Notice and Settlement Check Packets are returned as undeliverable with no forwarding address; determining the amount of all payroll tax deductions to be withheld; providing weekly status reports to Defendant's counsel and Plaintiffs' Counsel regarding the status of the mailing of the Notice and Settlement Check Packets, the claims administration process, and the identity and number of Collective Members who have endorsed and deposited or cashed their Settlement Checks; sending reminder postcards as required by this Agreement, cutting and mailing checks for Court-approved Service Awards to Named Plaintiffs and service award recipients; wiring or cutting and mailing Court-approved attorneys' fees and costs to Plaintiffs' Counsel; printing and providing W-2s and 1099 forms as required under this Agreement and applicable law; and for such other tasks set forth in this Settlement or as to which the Settling Parties mutually agree.

(B)   The Settlement Claims Administrator shall also establish, control, and maintain the QSF according to the terms of this Agreement, and be responsible for filing all required tax returns for the QSF and paying any taxes due.

(C)   The Settlement Claims Administrator's fees shall come out of the GSF and be paid from the QSF upon completion of all duties required to be performed by the Settlement Claims Administrator under the terms of this Agreement and any Court orders.

(D)   The Parties agree to cooperate with the Settlement Claims Administrator and to provide accurate information necessary to send Notice and Settlement Check Packets in accordance with the terms of this Agreement.

**3.3**   **Approval Order and Dismissal.**

(A)   Plaintiffs' Counsel will submit to the Court an unopposed motion to enter the Approval Order. The motion shall request that the Court: (1) approve this Agreement as fair, reasonable, adequate, and rule that it is binding on all Parties, including Collective Members who endorse and deposit or cash Settlement Checks; (2) order the Settlement Claims Administrator to perform all duties described herein; (3) order attorneys' fees and costs, as described herein, to be paid to Plaintiffs' Counsel, and service awards, as described herein, to be paid to Named Plaintiffs and service award recipients; (4) order the dismissal with prejudice of all claims asserted or that could have been asserted by the Collective Members who endorse and

deposit or cash their Settlement Checks; (5) order entry of the Approval Order in accordance with this Agreement; and (6) retain jurisdiction as necessary for the purpose of effectuating the terms of this Agreement.

(B)     If the Court fails to enter the Approval Order, the Parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the Court's decision; or (2) renegotiate the settlement and seek Court approval of the renegotiated settlement.

(C)     If any reconsideration  and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted and all Plaintiffs' claims shall be deemed tolled from the date of the filing of the Complaint.

**3.4**     **Provision of Information to Settlement Claims Administrator.**  Within fifteen (15) days of the Court's entry of the Approval Order, Petco will provide the Settlement Claims Administrator with a list, in electronic form, of all Collective Members containing the following information: name, last known address, last known phone number(s), last known email address(es), and location(s) and dates of employment within the Relevant Statutory Period.

**3.5**     **Notice and Settlement Check Packets, Releases, and Settlement Check Cashing Period.**

(A)     Within thirty-one (31) days following the date of the Approval Order, the Settlement Claims Administrator shall issue and mail each Collective Member a Notice and Settlement Check Packet containing a Notice and Settlement Check. The Notice shall advise each Collective Member of the amount of their portion of the settlement award, as defined in section 4.4(C), below. Prior to the mailing of the Notice and Settlement Check Packets, the Settlement Claims Administrator shall attempt to confirm the accuracy of the addresses through the United States Post Office's National Change of Address database and other commercially reasonable means, and shall mail the Notice and Settlement Check Packet to any updated address obtained therefrom.

(B)     The Settlement Claims Administrator shall make all reasonable efforts to obtain the correct address of any Collective Members for whom a Notice and Settlement Check Packet is returned as undeliverable.  The Settlement Claims Administrator will notify Plaintiffs' Counsel and Defendant's Counsel of any Notice and Settlement Check Packet sent to a Collective Member that is returned as undeliverable after mailing, who will within five business  days provide a Collective Members' Social Security number so that the Settlement Claims Administrator may  thereafter perform a skip trace using social security numbers, among other information, to ascertain correct mailing information to affect a second mailing.  In the event of such re-mailing, the Notice and Settlement Check Packet must inform the recipient that the Settlement Check must be endorsed and deposited or cashed on or before the later of fifteen (15)

6

days from the date of re-mailing or the Bar Date.

(C)    The end of the time period for Collective Members to endorse and deposit or cash their Settlement Check shall be one hundred eighty (180) days after the day on which the Settlement Claims Administrator mails a Settlement Check to a Collective Member ("Settlement Check Cashing Period").

(D)    In the event of any dispute over a Collective Member's dates of employment and/or the late endorsement and deposit or cashing of a Settlement Check, the Parties will meet and confer in good faith in an effort to resolve the dispute.  To the extent a Settlement Check is endorsed and deposited or cashed within ten (10) days of the Bar Date for which there is an objectively reasonable, good faith explanation to support the otherwise untimely action, it will be presumed that the endorsement and deposit or cashing of the Settlement Check is timely.

(E)    Thirty (30) days prior to the Bar Date, the Settlement Claims Administrator will distribute a reminder email and reminder postcard by first-class mail to all Named Plaintiffs and Collective Members who have not endorsed and deposited or cashed their Settlement Checks.

(F)    No later than ten (10) days after the last Settlement Check is mailed to a Collective Member, the Settlement Claims Administrator shall provide Petco with a signed copy of each Settlement Check that has been deposited or cashed by a Collective Member, redacting any bank account information.

## 4.    SETTLEMENT TERMS

### 4.1    Gross Settlement Fund and Funding of Qualified Settlement Fund.

(A)    Petco agrees to pay a maximum Gross Settlement Fund of Eight Hundred Forty Five Thousand Dollars ($845,000), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Collective Members, any Court-approved service awards to service award recipients, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs.  Petco will not be required to pay more than Eight Hundred Forty Five Thousand Dollars ($845,000) under the terms of this Agreement, including the Employer's share of payroll taxes.

(B)    By no later than twenty-one (21) days of the date of the Approval Order, Petco shall remit the full amount (100%) of the GSF to the Settlement Claims Administrator for deposit into the QSF.

(C)    Any uncashed Settlement Checks, Service Awards and all other amounts remaining in the QSF one hundred eighty (180) days following the date of the mailing of the last Settlement Check to a Collective Member shall revert to Petco.

**4.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    Plaintiffs' Counsel will petition the Court for an award of attorneys' fees in the amount of one-third of the GSF (*i.e.*, $281,666.67), and for reimbursement of their litigation costs and expenses not to exceed $85,000 to be paid from the GSF. After depositing the GSF with the Settlement Claims Administrator for the QSF as set forth herein, Petco shall have no additional liability for Plaintiffs' Counsel's attorneys' fees and costs. Petco will not contest the amount sought as attorneys' fees and costs.

(B)    Any fees or costs sought by Plaintiffs' Counsel but not approved by the Court shall revert to the Net Settlement Fund.

(C)    The attorneys' fees and costs shall be paid from the QSF thirty-one (31) days after the date of the Approval Order.

**4.3    Service Awards.**

(A)    Named Plaintiffs Kristina Kucker, Magda Alexandra Sereno, Amy Doidge, Sonny Urbine, Jill Filippone, and Heather Bradshaw may apply to the Court to receive a service award of Four Thousand Dollars and Zero Cents ($4,000) each for Plaintiffs Kristina Kucker and Magda Alexandra Sereno; and a Service Award of Two Thousand Dollars and Zero Cents ($2,000) each for Plaintiffs Amy Doidge, Sonny Urbine, Jill Filippone, and Heather Bradshaw.

(B)    Should the Court not approve all or part of any Service Award sought, the sum shall revert to the Net Settlement Fund.

(C)    Recipients of service awards agree to the general release in Section 5.2 in consideration for receipt of the Service Award.  Should the Court deny any Named Plaintiff's application for a Service Award, that individual shall be subject only to the release outlined in Section 5.1 of this Agreement.

(D)    Approved Service Awards shall be paid from the QSF thirty-one (31) days after the date of the Approval Order.

**4.4    Distribution to Collective Members.**

(A)    All Collective Members are eligible for a payment hereunder.

(B)    The allocation to Collective Members will be made from the Net Settlement Fund.

(C)    Each Collective Member who worked as a Pet Stylist will receive a flat payment of $[2.125*Grooming Assistant Payment].  Each Collective Member who worked as a Grooming Assistant will receive a flat payment of $[Net

Settlement Amount/(Number of Grooming Assistants + (2.125*Number of Pet Stylists))].

4.5    **Tax Characterization.**

(A)    Settlement Checks paid to Collective Members shall be allocated 50% to W-2 wage payments subject to withholdings, and 50% to 1099 non-wage payments for interest and liquidated damages.  Service Awards shall be reported as non-wage income on a 1099;

(B)    The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Collective Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Collective Members and service award recipients and for remitting all taxes withheld to the appropriate authorities.

5.    **RELEASE**

5.1    **Release by Collective Members.**  By participating in the settlement, all Collective Members who timely cash their Settlement Checks will fully release Petco of and from any and all claims brought or which could have been brought in the Complaint and First Amended Complaint, or that the Collective Members knew or should have known of at the time of the deposit or cashing of their Settlement Checks, relating to allegations that Petco's failure to pay the Collective Members for the purchase and maintenance of grooming equipment resulted in Petco failing to pay the applicable minimum wage and overtime pay to the Collective Members, and including all wage and hour claims, including under the Fair Labor Standards Act or any other federal, state, or local law, statute, rule, ordinance, regulation, constitution, court-created/common law, and/or agreement relating to alleged unlawful deductions or expenses; minimum wage, straight time, overtime violations, and/or short pay, and any other wage and hour claim that is derivative of these claims (collectively referred to as "Released Wage and Hour Claims").  Notwithstanding this release, the Released Wage and Hour Claims do not preclude any federal or state wage and hour claims unrelated to the Released Wage and Hour Claims, including those based on misclassification as an exempt employee, contract or other severance pay, bonus pay, sick leave pay, holiday pay, vacation pay, life insurance, health or medical insurance or any other fringe benefit or disability claims, or any claims for damages, attorneys' fees, expenses and/or costs unrelated to the Released Wage and Hour Claims. The Released Wage and Hour Claims also specifically exclude all other claims relating to the employment or termination of employment of any of the Collective Members, including, without limitation, claims under Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1870, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Credit Reporting Act, the Family and Medical Leave Act, the National Labor Relations Act, and under any and all applicable state and local statutes, regulations or common law, and any claims that cannot as a matter of law be waived.  These exclusions are not intended to revive any derivative claim for a penalty that was otherwise released as part of the Released Wage and Hour Claims.  In the

9

event of any ambiguity as to whether a claim was released or excluded under this provision, the ambiguity will be resolved in favor of such claim having been released to foreclose a double penalty.

5.2     Release by Service Award Recipients.  In addition to the waiver and release contained in Section 5.1 above, the service award recipients, their respective heirs, executors, administrators, successors and assigns, voluntarily release and forever discharge Defendants, and any of their owners, subsidiaries, divisions, affiliated entities, agents, officers, principals, trustees, administrators, executors, attorneys, employees, former employees, insurers, reinsurers, predecessors, successors and assigns, both individually and in their official capacities (collectively "Releasees") of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.;  Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*., as amended by the Older Workers Benefits Protection Act, the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq*., as amended; the Family and Medical Leave Act; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of each service award recipient's execution of this Agreement.

5.3     **Counsel's Acknowledgement.**  Counsel for the collective, specifically, Outten & Golden, LLP, Shavitz Law Group, P.A., and Fitapelli & Schaffer, LLP acknowledge that, as of the execution of this Agreement, that they have no clients who have decided to investigate or pursue any wage and hour claims against Petco not waived by this Agreement, and have no current intent to investigate or pursue any wage and hour claims against Petco not waived by this Agreement.

5.4     **Claimants' Endorsement.**

(A)     All Settlement Checks mailed to Collective Members shall contain, on the back of the check, the following limited endorsement:

**FINAL RELEASE OF CLAIMS:**

I understand that I have up to 180 days from the date I was mailed this Settlement Check to sign and deposit or cash this Settlement Check.

By participating in the settlement by endorsing and depositing or cashing this check, I fully release Petco of the claims set forth in the attached Notice of Settlement, which I received as part of the Notice Settlement Packet that included this Settlement Check.

_____
Signature

If a Collective Member does not endorse and deposit or cash their settlement check, he or she will release no claims and the unclaimed funds will revert back to Defendant after 180 days.

**5.5    Non-Publication.**  Plaintiffs' Counsel will refrain from any public comment regarding the settlement.  They will issue no press release regarding the settlement, and will not post any information regarding the settlement on their firm's websites or on any social media outlet.

**6.      INTERPRETATION AND ENFORCEMENT**

**6.1    Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**6.2    Motion for Approval of the Settlement.**  Plaintiffs agree to file by March 1, 2017, a Motion for Approval of the Settlement seeking approval of the settlement.  If the Court denies the Motion for Approval of the Settlement, the parties agree to negotiate in good faith over a proposed revised settlement.

**6.3    No Assignment.**  Plaintiffs' Counsel, Named Plaintiffs, and Service Award recipients represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**6.4    Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.  If the settlement agreement is not approved by the Court, the Litigation shall continue as if this Agreement was never agreed to, unless the parties a) jointly agree to reconsideration or appellate review of the decision denying approval of the settlement, or b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

6.5    **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs, Service Award recipients, and all Collective Members who endorse and deposit or cash their Settlement Check, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

6.6    **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.7    **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.8    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

6.9    **Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

6.10   **Governing Law.**  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.11   **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

6.12   **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by any other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.13   **When Agreement Becomes Binding; Counterparts.**  This Agreement shall become valid and binding upon its complete execution.  The parties may execute this

Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

**6.14   Facsimile, Electronic and Email Signatures**. Any signature made and transmitted by facsimile, email or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page by facsimile, email or other electronic means.

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "4" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFFS AND SERVICE AWARD RECIPIENTS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.

WE AGREE TO THESE TERMS.

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS AGREEMENT HAVE BEEN FULLY EXPLAINED TO ME.

KRISTINA KUCKER

2/26/2017                                     By: _____
                                                      47780D5C9B55493...
_____
         Date                                     Kristina Kucker

SONNY URBINE

                                                  By: _____
_____
         Date                                     Sonny Urbine

13

DocuSign Envelope ID: D4794434-B6A0-4D4B-9556-3B47001E39C5

Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

6.14 **Facsimile, Electronic and Email Signatures**. Any signature made and transmitted by facsimile, email or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page by facsimile, email or other electronic means.

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "4" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFFS AND SERVICE AWARD RECIPIENTS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.

WE AGREE TO THESE TERMS.

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS AGREEMENT HAVE BEEN FULLY EXPLAINED TO ME.


KRISTINA KUCKER


_____                    By: _____
        Date                                   Kristina Kucker



SONNY URBINE


2/23/2017                                  By: _____
_____
        Date                                   Sonny Urbine


13

MAGDA ALEXANDRA SERENO

2/24/2017

By: _____

_____
Date

Magda Alexandra Sereno


AMY DOIDGE

_____   By: _____
Date

Amy Doidge


JILL FILIPPONE

_____   By: _____
Date

Jill Filippone


HEATHER BRADSHAW

_____   By: _____
Date

Heather Bradshaw


PETCO ANIMAL SUPPLIES STORES,
INC.,

_____   By: _____
Date

Name:

Title:

14

MAGDA ALEXANDRA SERENO

By: _____

_____
Date

Magda Alexandra Sereno


AMY DOIDGE



2/27/2017                                    By: _____
_____
Date

Amy Doidge


JILL FILIPPONE

By: _____

_____
Date

Jill Filippone


HEATHER BRADSHAW

By: _____

_____
Date

Heather Bradshaw


PETCO ANIMAL SUPPLIES STORES, INC.,

By: _____

_____
Date

Name:

Title:

14

MAGDA ALEXANDRA SERENO

By: _____

_____
Date

Magda Alexandra Sereno


AMY DOIDGE

By: _____

_____
Date

Amy Doidge


JILL FILIPPONE

By: _____

2/24/2017

_____
Date

Jill Filippone


HEATHER BRADSHAW

By: _____

_____
Date

Heather Bradshaw


PETCO ANIMAL SUPPLIES STORES,
INC.,

By: _____

_____
Date

Name:

Title:

14

MAGDA ALEXANDRA SERENO

_____                By: _____
Date                                   Magda Alexandra Sereno


AMY DOIDGE

_____                By: _____
Date                                   Amy Doidge


JILL FILIPPONE

_____                By: _____
Date                                   Jill Filippone


HEATHER BRADSHAW

                                       DocuSigned by:

2/23/2017                              By: _____
Date                                   Heather Bradshaw


PETCO ANIMAL SUPPLIES STORES,
INC.,

_____                By: _____
Date                                   Name:

                                       Title:


14

MAGDA ALEXANDRA SERENO

By: _____

_____
Date

Magda Alexandra Sereno


AMY DOIDGE

By: _____

_____
Date

Amy Doidge


JILL FILIPPONE

By: _____

_____
Date

Jill Filippone


HEATHER BRADSHAW

By: _____

_____
Date

Heather Bradshaw


PETCO ANIMAL SUPPLIES STORES,
INC.,

By: _____

2/27/17
_____
Date

Name: Alan Tse

Title: Senior Vice President, General
Counsel

14

# Exhibit A

**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KRISTINA KUCKER, SONNY URBINE, HILLARY ANDERSON, MAGDA ALEXANDRA SERENO, AMY DOIDGE, JILL FILIPPONE, and HEATHER BRADSHAW, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**PETCO ANIMAL SUPPLIES STORES, INC.,**<br><br>**Defendant.** | **Case No. 14 Civ. 9983 (DCF)**<br><br>**Proposed Order** |

**[PROPOSED] ORDER APPROVING SETTLEMENT,
<u>SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS</u>**

The above-entitled matter came before the Court on Plaintiffs' Motion for Approval of Settlement, Service Awards, and Attorneys' Fees and Costs.  After reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in Support of the Motion for Settlement Approval, and the Declaration of Molly A. Brooks ("Brooks Decl.") and supporting declarations and exhibits, the Court hereby finds as follows:

The Court approves the parties' Settlement Agreement and Release, attached to the Brooks Decl. as Exhibit A, and "so orders" all of its terms.

1.     The Court has reviewed and approves the Fair Labor Standards Act settlement as set forth in the Settlement Agreement.

2.     The Court approves the proposed Notice of Settlement and the proposed plan for its distribution.

3.      The Court approves the Service Awards for Kristina Kucker, Magda Alexandra Sereno, Amy Doidge, Sonny Urbine, Jill Filippone, and Heather Bradshaw.

4.      The Court grants Plaintiffs' request for attorneys' fees and out-of-pocket costs.

5.      The Court approves Rust Consulting, Inc. as the Settlement Claims Administrator.

6.      This case is dismissed with prejudice.

7.      The Court will retain jurisdiction over this action to enforce the settlement.

SO ORDERED:


_____
The Honorable Debra Freeman
United States Magistrate District
Court Judge

Dated:

# Exhibit B

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Molly A. Brooks
Sally J. Abrahamson
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz, admitted *pro hac vice*
Susan H. Stern, admitted *pro hac vice*
1515 S. Federal Hwy, Suite 404
Boca Raton, FL 33432
Telephone:  (561) 447-8888

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Arsenio Rodriguez
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone:  (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTINA KUCKER, SONNY URBINE, HILLARY ANDERSON, MAGDA ALEXANDRA SERENO, AMY DOIDGE, JILL FILIPPONE, and HEATHER BRADSHAW, on behalf of themselves and all others similarly situated, <br><br>                  Plaintiffs, <br><br>   -against- <br><br> PETCO ANIMAL SUPPLIES STORES, INC., <br><br>                Defendant. | No.  14 Civ. 9983 (DCF) |

## <u>COURT AUTHORIZED NOTICE</u>

To:

[Name]
[Address]
[City, State Zip]

1

**Questions?**
Contact Plaintiffs' counsel at:
(212) 245-1000 or toll-free at (XXX) XXX-XXX
Petcolawsuit@outtengolden.com

**You joined the lawsuit identified above.  Recently, the United States District Court approved a settlement of the lawsuit and authorized this Notice.**

**A settlement check payable to you is enclosed.  Read this entire Notice before signing and depositing or cashing the check.**

*This is a court authorized notice.  This is not a solicitation from a lawyer.*

- This notice is directed to all individuals who were employed by Petco as a Pet Stylist or Grooming Assistant, and who previously opted in to this lawsuit by filing a Consent to Join (collectively, "the Collective").

- The six individual Plaintiffs identified in the caption are former Pet Stylists and Grooming Assistants who sued Petco Animal Supplies Stores, Inc. ("Petco"), claiming that Petco required Pet Stylists and Grooming Assistants to purchase and maintain their own grooming equipment and failed to reimburse them for any of these costs.  Plaintiffs alleged Petco's policies and practices caused their wages to fall below the applicable minimum wage for pay periods when they purchased or maintained their grooming equipment.

- Petco maintains that all Pet Stylists and Grooming Assistants were provided all equipment necessary to perform their duties by Petco during the relevant time period. Petco further maintains that it did not require Pet Stylists and Grooming Assistants to purchase additional equipment, and that it lawfully compensated them at all times.

- To avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the parties have concluded that it is in their best interests to resolve and settle the action by entering into a settlement agreement.  Accordingly, the employees who filed the suit on behalf of themselves and the Collective and have settled their claims against Petco.  Petco has agreed to deposit $845,000 (the "Gross Settlement Amount") into a fund to pay the Collective, as well as to pay attorneys' fees, service awards, litigation costs, and the expenses of administering the settlement.

- Applying the allocation formula created by the settlement, you are entitled to receive approximately $[AwardRounded], half of which is subject to deductions for applicable taxes and withholdings, like any other paycheck.  This amount is based on whether you were a Pet Stylist or Grooming Assistant.

**Questions?**
Contact Plaintiffs' counsel at:
(212) 245-1000 or toll-free at (XXX) XXX-XXX
Petcolawsuit@outtengolden.com

- Neither Class Counsel  (the attorneys representing Plaintiffs and the Collective and listed in Section 8 below) nor Petco make any representations concerning the tax consequences of this settlement or participation in it, and you are advised to seek your own personal tax advice about your settlement award if you participate in the settlement.

- As you have previously decided to join the above matter, you have a choice to make:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
| --- | --- |
| **ENDORSE AND DEPOSIT THE CHECK** | By signing the check and endorsing the release contained in this Notice (as referenced on the back of the check), and cashing or depositing the check, you will be agreeing to participate in the settlement and you will receive approximately the payment amount identified above, half of which is subject to applicable taxes and withholdings. |
| **DO NOTHING** | If you do not wish to participate in, or be bound by, the settlement, you should not sign the release referenced on the back of the check or cash or deposit the check. |

## BASIC INFORMATION

### 1.  Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Petco and neither party prevailed.  The parties agreed to a settlement to avoid further disputes and the risk, expense, and inconvenience of litigation.  The Plaintiffs and their attorneys believe that this settlement is a good outcome for all individuals who decided to opt-in to the suit.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 2.  What does the Settlement provide?

The settlement fully resolves and satisfies any claims for attorneys' fees and costs approved by the Court, all amounts to be paid to individuals who opted in to the suit and settlement, any Court-approved service awards to Plaintiffs, interest, and the Settlement Administrator's fees and costs.  The settlement has been allocated pursuant to the following formula:

**Questions?**
Contact Plaintiffs' counsel at:
(212) 245-1000 or toll-free at (XXX) XXX-XXX
Petcolawsuit@outtengolden.com

Each Collective Member who worked as a Pet Stylist will receive a flat payment of $[2.125*Grooming Assistant Payment].  Each Collective Member who worked as a Grooming Assistant will receive a flat payment of approximately $[Net Settlement Amount/(Number of Grooming Assistants + (2.125*Number of Pet Stylists))].

Settlement checks that are not cashed or deposited on or before [180 days after the postmark of the envelope containing this Notice] will be null and void.

### 3.  How much is my payment and how was it calculated?

Based on the allocation formula that has been approved by the Court, you are receiving a settlement check for approximately $_____, half of which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive a W-2, and half of which will not be taxed at this time and will be reported on IRS Form 1099.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 7 below.

## HOW YOU GET A PAYMENT

### 4.  How do I get my payment?

A check is enclosed.  All you have to do is sign the release contained in this Notice and referenced on the back of the check and cash or deposit the settlement check.

### 5.  What am I giving by accepting the settlement check?

By signing the release referenced on the Settlement Check and contained in this Notice, and cashing or depositing your settlement check before[180 days after the postmark of the envelope containing this Notice], you fully release Petco of and from any and all claims brought or which could have been brought in the Complaint and First Amended Complaint, or that you knew or should have known of  at the time of depositing or cashing of the enclosed Settlement Check, relating to allegations that Petco's not paying the Collective Members for the purchase and maintenance of grooming equipment resulted in their wages falling below the applicable minimum wage, and including all wage and hour claims, including under the Fair Labor Standards Act or any other federal, state, or local law, statute, rule, ordinance, regulation, constitution, court-created/common law, and/or agreement relating to alleged unlawful deductions or expenses; minimum wage, straight time, overtime violations, and/or short pay, and any other wage and hour claim that is derivative of these claims.

By participating in the settlement, you **do not waive** any federal or state wage and hour claims unrelated to the claims listed above, including those based on misclassification as an exempt

4
**Questions?**
Contact Plaintiffs' counsel at:
(212) 245-1000 or toll-free at (XXX) XXX-XXX
Petcolawsuit@outtengolden.com

employee, contract or other severance pay, bonus pay, sick leave pay, holiday pay, vacation pay, life insurance, health or medical insurance or any other fringe benefit or disability claims, or any claims for damages, attorneys' fees, expenses and/or costs unrelated to the Released Wage and Hour Claims. You also **do not waive** any other claims relating to the employment or termination of employment of any of the Collective Members, including, without limitation, claims under Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1870, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Credit Reporting Act, the Family and Medical Leave Act, the National Labor Relations Act, and under any and all applicable state and local statutes, regulations or common law, and any claims that cannot as a matter of law be waived.

To get a copy of the Settlement Agreement, please follow the instructions outlined in Section 7 of this Notice.

## THE LAWYERS REPRESENTING YOU

### 6.  How will the lawyers be paid?

The Court has approved payment to Class Counsel of one-third of the settlement fund for attorneys' fees.  These fees compensate Class Counsel for investigating the facts, litigating the case and negotiating and finalizing the settlement.  The Court also has approved payment of Class Counsel's out-of-pocket costs, excluding the cost of the Settlement Administrator.  The costs of the Settlement Administrator are also paid from the settlement fund.

The Court has approved payments of $16,000 in total to the Named Plaintiffs to recognize the risks they took and their services to the collective action.  This means that the two Named Plaintiffs who were deposed will each receive a payment of $4,000 and the four Named Plaintiffs who were not deposed will each receive a payment of $2,000 in addition to their settlement payment under the allocation formula.

## FOR MORE INFORMATION

### 7.  Are there more details about the Settlement?

This Notice summarizes the proposed settlement.  More details are in the Settlement Agreement. You are encouraged to read it.  To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control.  You may obtain a copy of the Settlement Agreement by sending a request, in writing, to:

[SETTLEMENT ADMINISTRATOR]
Petco Settlement
[ADDRESS LINE ONE]

5
**Questions?**
Contact Plaintiffs' counsel at:
(212) 245-1000 or toll-free at (XXX) XXX-XXX
Petcolawsuit@outtengolden.com

[ADDRESS LINE TWO]
Facsimile: (XXX) XXX-XXXX
Email: XXX@XXXX.com

| 8.  How do I get more information? |
|---|

If you have other questions about the settlement, you can contact the Claims Administrator, listed in Section 7, or Class Counsel at the addresses and/or telephone numbers below.

Sally J. Abrahamson
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000 or toll-free at (877) 468-8836
Petcolawsuit@outtengolden.com

Alan L. Quiles
Shavitz Law Group, P.A.
1515 S. Federal Hwy, Suite 404
Boca Raton, FL 33432
(561) 447-8888

Arsenio D. Rodriguez
Fitapelli & Schaffer, LLP
28 Liberty Street, 30th Floor
New York, New York 10005
(212) 300-0375

DATED:  March XX, 2017

**Questions?**
Contact Plaintiffs' counsel at:
(212) 245-1000 or toll-free at (XXX) XXX-XXX
Petcolawsuit@outtengolden.com